**GETTY PETROLEUM CORP.,**
**Plaintiff–Appellee,**
**Cross–Appellant,**

v.

**BARTCO PETROLEUM CORP., Nicholas J. Bartolomeo, Miracle Petroleum Corp., Prugig Realty Corp., Anthony Golio, Peter Ciorciari, Lena Petroleum Corp., A.E.N. Trucking, Corp., Patrick O'Reilly, Paddy O's Service Inc., and Daniel J. Feigenbaum, Defendants,**

**Anthony Golio, Bartco Petroleum Corp., and Nicholas J. Bartolomeo, Defendants–Appellants, Cross–Appellees.**

Nos. 494–496, Dockets 87–7668, 87–7674 and 87–7770.

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1988.

Decided Sept. 22, 1988.

Clifford J. Chu, Great Neck, N.Y. (Hayt, Hayt & Landau, Attys. for defendants Bartco Petroleum Corp., Roy Broudny, P.C., Ralph Pernick, Great Neck, N.Y., of counsel), for defendants-appellants, cross-appellees Bartco Petroleum Corp. and Nicholas J. Bartolomeo.

Lawrence A. Berger, Great Neck, N.Y., for defendants-appellants cross-appellees Anthony Golio and Prugig Realty Corp.

Robert G. Del Gadio, Garden City, N.Y. (Harry R. Dreizen, of counsel), for plaintiff-appellee, cross-appellant Getty Petroleum Corp.

Before LUMBARD, CARDAMONE, and PRATT, Circuit Judges.

CARDAMONE, Circuit Judge:

The purposes underlying the Lanham Trademark Act of 1946 are to protect the public so it may buy a product bearing a particular trademark with confidence that it will get the product it wants and to protect the holder of the mark's investment in time and money from its misappropriation by pirates and cheats. The defendants-appellants on this appeal violated the Lanham Act by infringing the "Getty" trademark "willfully, intentionally and with a callous and reckless disregard" for plaintiff's rights.

The question before us—one neither this court nor the Supreme Court have expressly ruled upon—is whether punitive damages may be imposed against a trademark infringer under § 35 of the Lanham Act. The district court thought that punitive damages could be imposed and permitted a jury award for plaintiff of over $2 million in such damages against appellants to stand. Under the statutory scheme the emphasis is on an award constituting "compensation and not a penalty," and a plaintiff's entitlement to recover such an award is "subject to the principles of equity." Punitive damages therefore constitute judicial punishment that under the Lanham Act does not fit the crime.

## BACKGROUND

The Federal Trade Commission, as a condition to its approval of the 1984 purchase of Getty Oil Company (Getty) by Texaco, Inc. (Texaco), required Texaco to transfer the "Getty" tradename and trademark and to divest itself of the acquired company's northeastern marketing facilities. *See Russo v. Texaco, Inc.*, 630 F.Supp. 682 (E.D.N.Y.), *aff'd*, 808 F.2d 221 (2d Cir. 1986). Power Test Corp. bought Getty's northeastern business in February 1985 from Texaco and obtained an exclusive trademark license for the "Getty" marks. On July 11, 1985 ownership of the "Getty" marks was transferred to Power Test, which thereupon changed its name to Getty Petroleum Corp. (Getty Petroleum). Getty Petroleum continued the business formerly conducted by Getty and is the plaintiff in the instant litigation.

Appellants Anthony Golio, Bartco Petroleum Corp. (Bartco), and Nicholas Bartolomeo—along with their eight codefendants—owned and operated three retail Getty gasoline service stations in Oceanside, New Hyde Park, and Garden City Park, New York, respectively. From February 1985 to April 1986 these service stations sold gasoline purchased from sources other than Getty Petroleum in violation of their franchise agreements with Getty. Getty Petroleum sued appellants in January 1986 alleging infringement of the registered "Getty" trademark and service mark and wrongful use in commerce of false designations of origin, false descriptions, and false representations in violation of the Lanham Trademark Act of 1946, 15 U.S.C. §§ 1051, 1114(1), 1116–1118, and 1125(a) (Lanham Act). Plaintiff also alleged unfair competition under the common law and various violations of state law, including dilution of trademark value, false advertising, and breach of contract.

There have been two jury trials of this suit. We briefly set out the events in those trials that relate to this appeal. At the first trial in June 1987, the jury found appellants Bartco, Bartolomeo, and Golio—along with their codefendants—had violated the Lanham Act by infringing Getty Petroleum's trademark rights "willfully, intentionally and with a callous and reckless disregard" for the latter's rights. It awarded plaintiff compensatory damages totalling $107,579.75. The jury assessed in addition $6.5 million in punitive damages for the Lanham Act violations against Bartco ($1.5 million), Bartolomeo ($3 million), and Golio ($2 million).

Following that verdict, defendants moved, *inter alia*, for a judgment notwithstanding the verdict (j.n.o.v.) pursuant to Fed.R.Civ.P. 50(b) or, alternatively, for a new trial on the issue of punitive damages pursuant to Fed.R.Civ.P. 59. Plaintiff moved for increased compensatory damages pursuant to § 35 of the Lanham Act.

Interpreting *Quaker State Oil Ref. Corp. v. Kooltone, Inc.,* 649 F.2d 94 (2d Cir.1981), as approving punitive damages as a remedy under the Lanham Act, the district judge denied defendants' motion for a j.n.o. v. but nonetheless vacated the award of punitive damages as against the appellants, finding it "so high as to shock the judicial conscience and constitute a denial of justice," *Zarcone v. Perry,* 572 F.2d 52, 56 (2d Cir.1978). The trial judge denied plaintiff's request for increased compensatory damages, but ordered a new trial on the issue of punitive damages, unless plaintiff agreed to a remittitur, which Getty Petroleum refused.

A second jury trial solely on the issue of Bartco's, Bartolomeo's, and Golio's liability for punitive damages was therefore held before the same district court judge a month later in July 1987. The second jury awarded over $2 million punitive damages to Getty Petroleum—$1,833,000 from Bartco and Bartolomeo, jointly, and $172,000 from Golio. Defendants again moved for a j.n.o.v. or, alternatively, a remittitur, which Judge Mishler denied. Finally, in a decision and order dated September 2, 1987 the district court assessed attorney fees of $157,192 and costs against Bartco and Bartolomeo severally and jointly with eight codefendants.

Bartco, Bartolomeo, and Golio appeal from the award of punitive damages for the Lanham Act violations and from the assessment of attorney fees and costs. Plaintiff Getty Petroleum cross-appeals from the order vacating the first jury's award of punitive damages and denying its motion for enhanced compensatory damages.

## DISCUSSION

### I  *Punitive Damages Under § 35 of the Lanham Act*

#### A.  Threshold Issues

■ Getty Petroleum urges us not to reach the question of whether § 35 of the Lanham Act, 15 U.S.C. § 1117(a) (Supp. IV 1986), authorizes punitive damages for infringement of a registered trademark. It argues first that it presented an overall claim of unfair competition of which its Lanham Act cause of action was only a part, and that the jury's punitive damages award could be justified under a common law unfair competition theory and its state law claims. Second, plaintiff asserts that defendants' failure to object to the district court's jury charge on punitive damages waived any objection under Fed.R.Civ.P. 51.

We need not address whether plaintiff proved a common law unfair competition or state law claim or whether punitive damages are available under those theories because the record before us reveals that the jury considered only plaintiff's federal trademark infringement cause of action. Although plaintiff's complaint purported to state contract and common law unfair competition claims and various causes of action under the Lanham Act and the New York General Business Law, such allegations are irrelevant. What are pertinent are the theories of recovery actually charged to the jury. *Baas v. Hoye,* 766 F.2d 1190, 1194 (8th Cir.1985).

The record discloses that on June 3, 1987 —early in the first trial—plaintiff withdrew its claim for injury to its good will and reputation. On June 9 plaintiff withdrew its New York General Business Law claims for dilution of trademark value and false advertising and its breach of contract claims pertaining to the franchise agreements. During an on-the-record discussion of plaintiff's requested jury charges, the trial judge was of the opinion that plaintiff had withdrawn all its asserted causes of action, except its claim of trademark infringement. Plaintiff's counsel agreed that no other legal theories remained in the case.

The district court charged the plaintiff's theory of damages to the first jury in the following words

The Plaintiff, Getty Petroleum, brings this action claiming trademark infringement in the sale of gasoline by operators of three gasoline service stations.... They also claim a false description of the nature and quality of the gasoline sold to

the public by using the Getty Trademark for the sale of non–Getty unleaded gasoline. The claims are based on two particular sections of an act of Congress commonly called the Lanham Act.

Further, the jury's special verdict form premised the imposition of punitive damages on a finding that appellants willfully infringed the "Getty" trademark with a "reckless disregard for Getty's trademark rights." No unfair competition issues were presented on the special verdict form for the jury to decide. Finally, the district judge apparently assumed both in its decision vacating the first punitive damages award (but approving punitive damages as a remedy under the Lanham Act) and during the second trial that the sole basis for awarding punitive damages was appellants' willful infringement of Getty Petroleum's trademark rights.

Thus, the theory for recovery of punitive damages "actually submitted to the jury," *Baas,* 766 F.2d at 1194, was willful infringement of the registered Getty trademark. Accordingly, we need not consider plaintiff's alternative unfair competition theory. *See id.* (refusing to consider plaintiff's common law negligence claim where case was submitted to jury solely as a federal statutory violation); *National Equip. Rental, Ltd. v. T.G. Stanley,* 283 F.2d 600, 603 (2d Cir.1960) ("[C]ourt and counsel tried the case below on the assumption that [whether a transaction was a loan or not] was the only question. The issues cannot now be changed on appeal."). *Cf. North Am. Leisure Corp. v. A & B Duplicators, Ltd.,* 468 F.2d 695, 699 (2d Cir.1972) (remanding for consideration of party's artisan's lien claim which was abandoned below: although "an appellate court is not absolutely barred from considering legal theories not relied on below, ... it must exercise such power with due regard to orderly procedure and fairness to the parties.").

Plaintiff's second reason urging us not to reach the punitive damages question is more troublesome. Fed.R.Civ.P. 51 provides in part, "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict...." Thus, the procedural hurdle posed by the failure of appellants' trial counsel to object to the jury charge on punitive damages under the Lanham Act would seem unsurmountable. Concededly, as a general rule a party's failure to object to an instruction on punitive damages would preclude our considering on appeal that party's argument against an award of such damages. Yet despite the careful wording of Rule 51, we may under particular circumstances—and even absent a timely objection—consider whether a jury instruction is legally proper.

Precedent for such consideration is found, for example, in a case with a similar procedural history, *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). There, the Supreme Court reviewed a municipal defendant's argument that it was error to charge a jury that 42 U.S.C. § 1983 authorized the award of punitive damages against it, even though the city had failed to object to that charge. The district court in that case had discussed and ruled upon the city's challenge to the punitive damages instruction when deciding a post-trial motion, though the challenge was not timely made under Rule 51. *Id.* at 253–54, 101 S.Ct. at 2753. The Supreme Court ruled that because the punitive damages issue was novel, important and likely to recur and "the question was squarely presented and decided on a complete trial record by the court of first resort, was argued by both sides to the Court of Appeals, and has been fully briefed before this Court," *id.* at 257, 101 S.Ct. at 2754, it was convinced that "no interests in fair and effective trial administration advanced by Rule 51 would be served if we refused now to reach the merits ourselves," *id.* at 256, 101 S.Ct. at 2754. *See* 5A J. Moore, *Moore's Federal Practice* ¶ 51.04 (2d ed. 1988).

The Supreme Court declined to limit its review to a "plain error" standard. *City of Newport,* 453 U.S. at 256–57, 101 S.Ct. 2754–55. As the Court explained, " 'Plain error' review under Rule 51 is suited to

correcting obvious instances of injustice or misapplied law." *Id.* at 256, 101 S.Ct. at 2754. However, the Court concluded that a district "court's interpretation of the contours of municipal liability ... hardly could give rise to plain judicial error since those contours are currently in a state of evolving definition and uncertainty." *Id.* We have employed the "plain error" exception to Rule 51 in order to reach issues not timely objected to in the trial court. *E.g., Williams v. City of New York,* 508 F.2d 356, 362 (2d Cir.1974); *see generally Air et Chaleur, S.A. v. Janeway,* 757 F.2d 489, 494 (2d Cir.1985) (discussing "plain error" doctrine). Despite defendants' arguments to the contrary, we believe that lacking clear precedent, the district court's punitive damages jury charge was not "plain error."

More recently, in *Rebaldo v. Cuomo,* 749 F.2d 133 (2d Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985), we reviewed the appellant's principal argument—whether a New York statute was preempted by the Employee Retirement Income Security Act—though the appellant had not challenged the state statute in the district court. In support of this deviation from the general rule against considering an issue not objected to in the trial court, we said that "[b]ecause the district court examined the issue of relationship in some detail and because that court's decision has broad legal ramifications and concerns the validity of a State statute," *id.* at 137, it was appropriate for review. Again, we found it significant that the parties also briefed and argued the preemption issue, and "the issue is solely one of law the determination of which could not be altered by appellee's producing additional evidence." *Id.* Thus, despite its language Rule 51 should not be applied inflexibly. What questions may be considered and decided for the first time on appeal are left primarily to our appellate discretion based on the circumstances of each individual case. *See Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).

■ Here, Judge Mishler addressed the propriety of awarding punitive damages for a violation of plaintiff's federal trademark rights, resting his decision—which has "broad legal ramifications"—on his impression of Second Circuit authority rather than on Rule 51 procedure. Further, the issue of whether punitive damages may be recovered for a Lanham Act violation was fully briefed and argued before us. And, significantly, no Supreme Court precedent governs this important question under § 35 of the Lanham Act, nor have we ruled on it. Finally, the resolution of these purely legal arguments will not require further proceedings on that point in the district court. Consequently, the circumstances of the instant case warrant an examination of the merits of this Lanham Act issue and "no interests in fair and effective trial administration advanced by Rule 51 would be served" by a refusal to reach it.

### B. § 35 and Punitive Damages

Having overcome both initial obstacles, we turn to consider the central issue presented—whether the district court erred when it found that § 35 of the Lanham Act authorized the jury to award punitive damages against the defendants for willful infringement of the "Getty" mark. To decide this question requires an examination of the Lanham Act's language, its legislative history, and relevant case law.

### I. *Statutory Language*

Analysis commences with § 35's plain language. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985) (construing Lanham Act provision). Moreover, "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

Section 35 of the Lanham Act provides

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, ... subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.... In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a) (Supp. IV 1986).

As can be seen, three nonexclusive monetary remedies are provided: recovery of defendant's profits, of any damages sustained by plaintiff, or of the costs of the action. Unlimited enhancement or reduction of an award based on defendant's profits is permitted in order to correct inadequacy or excessiveness. Where—as here—the recovery is based on the plaintiff's damages, the court—not the jury—may enhance the award up to three times the amount of actual damages. Such enhancement functions as "compensation *and not a penalty.*" (emphasis supplied).

No mention of punitive damages is made in this comprehensive statutory recovery scheme for infringement of a registered mark. Drawing from the statute's plain language, it is apparent that Congress did not allow for punitive damages as a remedy for holders of infringed marks. Nevertheless, the legislative history must be carefully plumbed to see if a congressional purpose contrary to that reading of the statutory language may be ascertained.

## 2. *Legislative History*

The legislation ultimately enacted as the Lanham Act or Trademark Act of 1946, Pub.L. No. 79–489, 60 Stat. 427 (1946) (codified as amended at 15 U.S.C. §§ 1051–1127 (1982 & Supp. IV 1986)), was conceived at a 1920 meeting of the American Bar Association's Patent Section. *See* J. McCarthy, 1 *Trademarks and Unfair Competition* § 5:4 (2d ed. 1984). In 1921 an A.B.A. committee formed by the Patent Section returned a draft of the bill—proposed to Congress first as the "Ernst Bill," then as the "Vestal Bill"—designed to revise the already inadequate Trademark Act of 1905, Pub.L. No. 58–84, 33 Stat. 724 (1905) (1905 Act). Both of these bills were the subject of congressional hearings and revisions until 1937. *See* 1 J. McCarthy, *supra*, at § 5:4; Koelemay, *Monetary Relief for Trademark Infringement Under the Lanham Act*, 72 Trademark Rep. 458, 481 (1982). In 1938, Congressman Lanham introduced a new bill largely based on the notes of A.B.A. trademark committee member Edward Rogers. *See* Rogers, *The Lanham Act & the Social Function of Trademarks*, 14 Law & Contemp. Probs. 173, 180 (1949). After a number of revisions, a draft finally met with the approval of both Houses of Congress and the Lanham Act was signed into law on July 5, 1946.

### (a) The 1905 Act

A brief review of the background of the 1905 Act is helpful. Consistent with the merger of law and equity, § 35 of the Lanham Act, currently 15 U.S.C. § 1117(a), incorporated § 16 from the 1905 Act, 33 Stat. 728 (remedy at law for registered trademark infringement), as well as § 19, 33 Stat. 729 (remedy in equity). Both § 16 and § 19 of the 1905 Act gave the district court discretion to increase an award of actual damages up to three times its amount. In addition § 19 allowed for recovery in equity based on an infringer's profits. Section 35 of the Lanham Act echoes these earlier recovery provisions. Significantly, neither § 16 nor § 19 contained provisions for punitive damages.

Although the patent law models for the 1905 Act authorized increased damages as a punitive concept, *see* Koelemay, *supra*, at 479–80, there is evidence that the 1905 Act's discretionary enhancement provision was remedial rather than punitive in nature. As the House Report on the 1905 Act explains, enhancement was partly justified by the difficulty of proving actual damages. The provision was

> new in the law of trade-marks. Similar provisions exist in the copyright and patent laws.... The difficulty of proving exact damages in cases of this character is well understood.... [T]he Government, which has made provision for the registration of trade-marks, should accord to the owners thereof ... full and complete redress for violation of their rights.

H.R.Rep. No. 3147, 58th Cong., 3d Sess. 9 (1904); *see* S.Rep. No. 3278, 58th Cong., 3d Sess. 10 (1905) (same language).

The 1905 Act's enhancement provision—substantially repeated in § 35 of the Lanham Act—was included to enable courts to redress fully plaintiffs whose actual damages were difficult to prove. When the enhancement provisions of the 1905 Act were transported into § 35 of the Lanham Act they carried with them the same conceptual baggage, that is to say, of being remedial and not punitive in nature. Further, at the time of the Lanham Act's passage, there were no reported cases in which judges had exercised their discretionary power to increase actual damages under § 16 or § 19 of the 1905 Act. *See* 2 J. McCarthy, *supra*, at § 30:28(B). Thus, the 1905 Act's language, history, and judicial construction give no affirmative indication that when Congress enacted § 35 of the Lanham Act—basing its recovery scheme in part on the 1905 Act—it aimed to furnish punitive damages as a remedy.

### (b) § 35 of the Lanham Act

The drafters of § 35 of the Lanham Act embellished upon the 1905 Act's recovery provisions in two significant ways. First, added to the provisions for increasing recovery was the caveat that a court's enhancement of a damage award or adjustment of profits awarded "shall constitute compensation and not a penalty." Second, all monetary recovery under § 35 is "subject to the principles of equity." The legislative history of these two embellishments argues strongly that it was Congress' purpose to preclude punitive damages as a remedy for trademark infringement.

The "compensation and not a penalty" clause borrows language from the Copyright Act of 1909, Pub.L. No. 60–349; § 25(b), 35 Stat. 1075, 1081 (1909), allowing for recovery of actual damages and actual profits from an infringer, in lieu of which a court could assess such sums, within limits, as appeared to be just so long as the discretionary award was "not ... regarded as a penalty." That phrase of the Copyright Act codified the Supreme Court's result in *Brady v. Daly*, 175 U.S. 148, 20 S.Ct. 62, 44 L.Ed. 109 (1899); *see* Koelemay, *supra*, at 521–23. The Court held in *Brady* that the imposition by statute of a mandatory minimum award for copyright infringement constituted neither penalty nor forfeiture. 175 U.S. at 154–55, 20 S.Ct. at 64–65; *see L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 107–09, 39 S.Ct. 194, 196, 63 L.Ed. 499 (1919). The minimum recovery, the Court continued, "does not change the character of the statute and render it a penal instead of a remedial one." *Brady*, 175 U.S. at 154, 20 S.Ct. at 64. A.B.A. committee member Rogers referred to the *Brady* decision during joint hearings on the trademark bill in response to an inquiry on the effect of the "compensation and not a penalty" clause. *Registration of Trade-marks: Joint Hearings on S. 2679 Before the House and Senate Comms. on Patents*, 68th Cong., 2d Sess. 48 (1925) [hereinafter *1925 Hearings*]; *see* Koelemay, *supra*, at 523 & n. 385. Hence, the 1909 Copyright Act's damages provision was construed at the time the Lanham Act was under consideration as a compensatory measure and not as a punitive measure. *See* Koelemay, *supra*, at 523; *see also Davilla v. Brunswick–Balke Collender Co.*, 94 F.2d 567, 570 (2d Cir.), *cert. denied*, 304 U.S. 572, 58 S.Ct. 1040, 82 L.Ed. 1536 (1938).

During the 1925 joint hearings on the draft of an early trademark bill, Rogers contrasted the 1905 Act's treble damages provision with a proposed provision that would give courts discretion to raise or lower awards of damages and profits

[The 1905 Act's trebling provision] seems to me to be useless, and anything more than proper compensation, an artificial increase, is in the nature of a penalty. So it seems to us better to give the court discretion to award the damages which under all the circumstances of the case seemed to be just, rather than arbitrarily fix treble damages....

*1925 Hearings, supra,* at 48 (testimony of Edward Rogers).

Concern that a trial court's discretion to increase a monetary award might serve as a punitive instead of remedial function was again manifested during hearings in 1941 before the Subcommittee on Trademarks of the House Committee on Patents. When the discussion focused on the provision for adjusting inadequate or excessive recovery based on profits, Mr. Fenning (of the United States Patent Quarterly) worried aloud that despite the "compensation and not a penalty" clause and the requirement that courts consider the circumstances of each case, the provision might allow unlimited recovery. Under this provision, he stated, "if [a judge] thinks the [infringer] has done a bad thing, the court can fine him in any sum he wants to." *Trade-marks: Hearings on H.R. 102, H.R. 5461, and S. 895 Before the Subcomm. on Trade-marks of the House Comm. on Patents,* 77th Cong., 1st Sess. 203 (1941) [hereinafter *1941 Hearings*]. Representative Lanham agreed, stating that "[t]here should be some limitation." *Id.* But Rogers emphasized that the provision to increase or decrease recovery based on an infringer's profits was simply a recognition of the problems of proof facing plaintiffs and that if the amount proven is inadequate, "a reasonable sum in the way of ordinary damages ought to be awarded." *Id.* at 205. Reacting to the suggestion that a plaintiff receive as recovery of defendant's profits an amount exceeding defendant's total sales, Rogers further stated, "You are going to

have a penalty there, and you do not want to do it." *Id.* Thus, Congress' insertion of the "compensation and not a penalty clause" supports a reading of § 35 that would preclude punitive damages.

The Lanham Act's second embellishment on the recovery provisions of the 1905 Act is the requirement that all monetary recovery under § 35 be "subject to the principles of equity." This language was added in the final draft of the Lanham bill introduced in 1945 and enacted in 1946. H.R. 1654, 79th Cong., 2d Sess. (1946); *see* Koelemay, *supra,* at 485. The only explanation for the phrase is found in a 1941 letter to Representative Lanham. *See* Koelemay, *supra,* at 485. "[I]t seems clear," the letter explains, "that the normal principles of equity in respect of allowance of and defenses to an accounting of profits and the recovery of damages are not affected by this bill." *1941 Hearings, supra,* at 228 (letter from Milton Handler). Therefore, the writer recommends inserting "according to the principles of equity" in the first sentence of what became § 35 in order "to effectuate the intentions of the draftsmen." *Id.* Although this letter, in suggesting the addition of the words "according to the principles of equity," obviously does not evince a congressional purpose with respect to punitive damages, it is at least plain that absent express statutory authority, punitive damages are not ordinarily recoverable in equity. *See* Koelemay, *supra,* at 520; *see also Coca–Cola Co. v. Dixi–Cola Labs.,* 155 F.2d 59, 63 (4th Cir.), *cert. denied,* 329 U.S. 773, 67 S.Ct. 192, 91 L.Ed. 665 (1946). *Cf. Livingston v. Woodworth,* 56 U.S. (15 How.) 546, 559–60, 14 L.Ed. 809 (1854) (reversing punitive award for patent infringement because award based on "chastisement" was contrary to "well-established rules of equity jurisprudence").

Some years ago we construed § 35's phrase "subject to the principles of equity" to preclude any monetary relief " 'where an injunction will satisfy the equities of the case' and where 'there has been no showing of fraud or palming off.' " *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena,* 433 F.2d

686, 706–07 (2d Cir.1970) (quoting *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386 (1947)), *cert. denied*, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). Thus, making recovery under § 35 subject to principles of equity scarcely can be used to support the imposition of punitive damages. Review of § 35 of the Lanham Act's legislative history consequently does not raise any doubt regarding our earlier conclusion based on reading the plain language of the Act. Neither the Lanham Act's antecedent—the 1905 Act—nor its embellishments in the context of monetary recovery evidence any congressional purpose to authorize punitive damages.

### 3. *Relevant Caselaw*

We conclude analysis of § 35 of the Lanham Act with a review of relevant caselaw. Although not on all fours with the instant matter, the Supreme Court's reasoning in *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.3d 475 (1967), sheds considerable light on the availability of punitive damages under § 35. In *Fleischmann*, the Court ruled that federal courts lacked power to award reasonable attorney fees even when a plaintiff established deliberate infringement of its trademark because at that time § 35's enumeration of available compensatory remedies did not include such an award. *Id.* at 721, 87 S.Ct. at 1408. Eight years later Congress amended § 35 by adding that "The court in exceptional cases may award reasonable attorney fees to the prevailing party." Pub.L. No. 93–600, 88 Stat. 1955 (1975), *reprinted in* 1974 U.S.Code Cong. & Admin.News 2260 (codified at 15 U.S.C. § 1117(a) (Supp. IV 1986)).

The reasoning of *Fleischmann* began with recognition of the general rule that "attorney's fees are not ordinarily recoverable". *Id.* at 717, 87 S.Ct. at 1407. Exceptions to the so-called "American" rule, the Court explained, were not developed in the context of statutory causes of action—such as trademark actions under the Lanham Act—"for which the legislature had prescribed intricate remedies." *Id.* at 719, 87 S.Ct. at 1408 (noting Lanham Act's provisions for injunctive relief and compensatory relief measured by defendant's profits, plaintiff's damages, and costs of the action). "When a cause of action has been created by a statute which expressly provides the remedies for vindication of the cause," the Court continued, "other remedies should not readily be implied." *Id.* at 720, 87 S.Ct. at 1408. Because several attempts to provide for recovery of attorney fees in the Lanham Act had failed, the Court concluded that "Congress intended § 35 of the Lanham Act to mark the boundaries of the power to award monetary relief in cases arising under the Act. A judicially created compensatory remedy in addition to the express statutory remedies is inappropriate in this context." *Id.* at 721, 87 S.Ct. at 14.

Even though *Fleischmann's* holding ruled out a different compensatory remedy—attorney fees—than the one under consideration, the same reasoning, we think, bars a separate recovery of punitive damages for infringement. *See* Koelemay, *supra*, at 519 & n. 354 (holding in *Fleischmann* "would seem by clear analogy to foreclose an implied remedy of punitive damages"); *see also* 2 J. McCarthy, *supra*, at § 30:29(B). Further, to imply a punitive damages award for trademark infringement would inappropriately add a remedy Congress could have—but did not—include in its intricate and comprehensive recovery scheme. Instead, it intended § 35 to "mark the boundaries of the power to award monetary relief in cases arising under the Act" and, as discussed above, such monetary relief was meant to be remedial, not punitive, in nature.

Decisions from sister circuits support the view that *Fleischmann* bars an award of punitive damages under § 35. *See Metric & Multistandard Components Corp. v. Metric's, Inc.*, 635 F.2d 710, 715–16 (8th Cir.1980) (rejecting plaintiff's argument for common law remedies for violations of § 43(a) of the Lanham Act: *Fleishmann* is "broad enough to suggest that section 35 is the exclusive provision for monetary damages for the entire Act"); *Electronics Corp. v. Honeywell, Inc.*, 487 F.2d 513 (1st

Cir.1973) (per curiam) (upholding district court holding that plaintiff not entitled to punitive damages under the Lanham Act based on *Fleischmann*, its reading of § 35, and the absence of judicial authority for such award), *aff'g* 358 F.Supp. 1230 (D.Mass.1973), *cert. denied*, 415 U.S. 960, 94 S.Ct. 1491, 39 L.Ed.2d 575 (1974); *see also Caesars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274 (3d Cir. 1975) (striking an award of punitive damages in reliance on district court's holding in *Electronics*).

We are unpersuaded by the district court's reference to two other circuits as having approved punitive damages as a Lanham Act remedy. Neither of those decisions discusses the availability of punitive damages under § 35 and, in fact, the punitive damages awards in both cases were authorized under state law. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1024 (9th Cir.1985) (California law authorized punitive damages), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1374–76 (10th Cir.1977) (Colorado law allows such damages), *cert. dismissed*, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978).

Finally, plaintiff's argument, relying on *Quaker State Oil Ref. Corp. v. Kooltone, Inc.*, 649 F.2d 94 (2d Cir.1981), that we have already approved recovery of punitive damages under § 35 is misplaced. In *Quaker State*, the district court did not question its power to award punitive damages for federal trademark infringement, and appellants failed to challenge that power on appeal. In disagreeing with appellants' argument that "the trial judge erred in submitting to the jury the issue of punitive damages, because appellants were ... given no notice that Quaker State sought such damages," *id.* at 95, we rested our decision affirming the imposition of punitive damages on a reading of the complaint and appellants' failure to object to the jury instruction, *id.* at 95–96, thus assuming *sub silentio* the availability of punitive damages. This kind of assumption has no precedential value, as we shall explain.

Recently, we reaffirmed the precept that not every aspect of each opinion has precedential force. In *Korwek v. Hunt*, 827 F.2d 874, 877 (2d Cir.1987), for example, we stated that in a previous opinion, "[n]either the district court nor this Court addressed [the question currently appealed]. The issue never was briefed, argued, or decided." The earlier panel had assumed *sub silentio* a resolution of the issue. In *Korwek* we noted that a *sub silentio* holding is " 'not binding precedent.' " *Id.* (quoting *Brooks v. Flagg Bros.*, 553 F.2d 764, 774 (2d Cir. 1977), *rev'd on other grounds*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). Thus, inasmuch as the punitive damages issue was not briefed, argued or addressed by the *Quaker State* panel, we are not constrained by it to affirm the instant award.

In sum, we hold that § 35 of the Lanham Act does not authorize an additional award of punitive damages for willful infringement of a registered trademark. So long as its purpose is to compensate a plaintiff for its actual injuries—even though the award is designed to deter wrongful conduct—the Lanham Act remains remedial. Obviously such ruling should not be read as an incentive for deliberate trademark infringement. To the extent that deterrence of willful infringement is needed, the statutorily provided remedies of § 35 are sufficient: a district court is empowered to enhance a monetary recovery of damages or profits, *e.g.*, *Deering, Milliken & Co. v. Gilbert*, 269 F.2d 191, 194 (2d Cir.1959), or to award plaintiff a full accounting of an infringer's profits, *e.g.*, *Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 356 (2d Cir. 1983); *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664 (2d Cir.1970).

## II  *The Award of Attorney Fees*

As mentioned above, § 35 of the Lanham Act now provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a) (Supp. IV 1986). Based on the jury's finding that defendants infringed

Getty Petroleum's trademark rights "willfully, intentionally and with a callous and reckless disregard" for Getty Petroleum's rights, the district court in its September 2, 1987 decision and order considered this an "exceptional" case within the meaning of § 35 and granted Getty Petroleum's application for attorney fees. Appellants do not challenge the district court's power and discretion to award attorney fees in this case, but they argue that the amount of the fee award is too high on several grounds.

■ Appellants contend initially that the district court erred by computing the attorney fees award based on Getty Petroleum's counsel's usual billing rate, which the trial court considered reasonable. Instead, appellants argue, the award should be limited to the hourly rate that Getty Petroleum was actually charged under its special billing arrangement with counsel. In awarding fees according to plaintiff counsel's usual rate, the district court rejected the reasoning of *Jewish Employment & Vocational Service v. Pleasantville Educ. Supply Corp.*, 601 F.Supp. 224 (E.D.Pa.1983). In that case, counsel in a trademark infringement action had agreed to bill the plaintiff at one-half its usual rate, "but would seek to recover fees at the full rate in which event the client would receive the excess." *Id.* at 225. The district court cut the plaintiff's fee request in half because it considered § 35's provision for attorney fees compensatory, not as a source for a windfall for plaintiff. *Id.*

Judge Mishler properly refused to follow *Jewish Employment.* While agreeing that the plaintiff should not profit by an award of attorney fees, the district judge also noted that the defendants—who acted willfully—should not benefit by the agreement between plaintiff and counsel. In the instant case—unlike *Jewish Employment*—the excess fee award is for counsel, not the plaintiff. Awarding reasonable fees to plaintiff's counsel accords with the statute and results in no benefit to plaintiff, whereas an award based on the special arrangement would result in a windfall to the appellants as wrongdoers, who would pay less. Thus, Judge Mishler properly awarded reasonable attorney fees based on counsel's usual billing rates.

■ Appellants next argue that plaintiff's attorney fees application reflected no attempt by counsel to "trim the fat," and that when computing reasonable attorney fees, the district court failed to consider the conduct of certain codefendants which prolonged the litigation and, further, that it improperly imposed the award jointly and severally against all defendants rather than apportioning the fees among the defendants. These matters fall well within the district court's discretion, and absent evidence of its abuse, not demonstrated here, we see no reason to disturb the award.

Finally, appellants assert that if punitive damages are not available under the Lanham Act, plaintiff's attorney fees and disbursements incurred at the second trial on the punitive damages issue should be disallowed. Footnote 2 of the district court's September 2, 1987 decision and order apparently supports this position. There the district judge commented, "we assume for this [attorney fees] application that punitive damages are recoverable and therefore Getty may recover the reasonable value of attorney's fees in sustaining its position. If it turns out otherwise, the award will be adjusted downward to eliminate that cost." Because it "turns out" that punitive damages are not available under § 35 of the Lanham Act, we remand to the district court to consider whether an adjustment of the attorney fees award is appropriate.

III *The Compensatory Damages Award*

Section 35 of the Lanham Act also provides that the district court may, in its discretion, enhance a damages award up to three times the sum found as actual damages, "according to the circumstances of the case." After the first jury verdict, Getty Petroleum's counsel moved for the court to enhance the jury's compensatory damages award pursuant to § 35. The district court summarily denied the motion in its June 22, 1987 decision and order, but it appears from transcripts in the record that

the availability and size of the punitive damages award influenced the trial court's decision not to increase the compensatory damages award.

Getty Petroleum contends in its cross-appeal that the district court abused its discretion in denying the motion for enhancement. We need not consider this argument because we believe—and appellants concede—that it is appropriate to remand the statutory enhancement question in light of our decision to disallow recovery for punitive damages. As noted, enhancing the monetary recovery of damages or profits may serve to deter willful infringement. *E.g., Deering, Milliken & Co.*, 269 F.2d at 194. Accordingly, the case is remanded to the district court for reconsideration of its decision to deny plaintiff's motion for enhancement of the compensatory damages award. Of course, the district court has wide discretion in this matter.

## CONCLUSION

For the reasons stated we affirm the finding that the appellants infringed plaintiff's trademark and the award of compensatory damages. We reverse the award of punitive damages under § 35 of the Lanham Act, and remand the case to the district court for it to determine the proper award of attorney fees and to reconsider plaintiff's motion for enhancement of the compensatory damages award in accordance with this opinion.

In light of this holding, we need not address plaintiff's cross-appeal from the order vacating the first jury's punitive damages award on the basis of excessiveness, nor need we consider appellants' arguments that the district court erred by denying their motions for a j.n.o.v. or a remittitur as to punitive damages following the second jury verdict, or that they were prejudiced by the punitive damages charge, by the method used to calculate punitive damages, and by the disproportionate size of the punitive damages award.

Appellants' request for their own attorney fees from plaintiffs respecting the second trial and on this appeal is frivolous, as is appellants' suggestion that the district court abused its discretion by permanently enjoining their infringement of plaintiff's trademark.

Any further appeals in this matter will be heard by this panel.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.