**IDEAL WORLD MARKETING, INC., Plaintiff,**

v.

**DURACELL, INC., Defendant.**

**No. 96–CV–4644 (FB).**

United States District Court, E.D. New York.

March 17, 1998.

Martin B. Pavane, Cohen, Pontani, Lieberman & Pavane, New York, NY, for Plaintiff.

Marie V. Driscoll, Robin, Blecker, Daley & Driscoll, New York, NY, for Defendant.

### MEMORANDUM AND ORDER

BLOCK, District Judge.

In this action for trademark infringement under § 43(a) of the Lanham Trade–Mark Act ("the Lanham Act" or "the Act"), 15 U.S.C. § 1125(a), and for unfair competition under New York common law, defendant Duracell, Inc. ("Duracell") moves for an order striking the jury demand contained in the complaint of plaintiff Ideal World Marketing, Inc. ("Ideal World"). Duracell argues that Ideal World is seeking solely equitable relief from the Court, and that it is therefore not entitled to have this matter tried by a jury. For the reasons that follow, Duracell's motion to strike the jury demand is denied.

### BACKGROUND

The complaint alleges that Ideal World adopted the trademark "Powercheck" in 1993, and has used the Powercheck trademark continuously since then in connection with the marketing, distribution, and sale of batteries. Ideal World contends that Duracell has recently begun marketing, distributing, and selling batteries under the Powercheck mark in interstate commerce, and has engaged in extensive advertising of Duracell's Powercheck products. Ideal World maintains that Duracell's use of the name Powercheck is "likely to cause confusion, or to cause mistake, or to deceive as to the source or origin of the batteries marketed, distributed and/or sold by plaintiff under its POWERCHECK mark." Complaint, at ¶ 15. In its prayer for relief, Ideal World has demanded a judgment: (1) that Duracell has violated § 43(a) of the Lanham Act and has committed unfair competition under New York common law; (2) that Duracell's acts were willful; (3) that Duracell be preliminarily and permanently enjoined from, *inter alia,* manufacturing, marketing, or advertising any product bearing the Powercheck name; (4) that Duracell deliver up for destruction any battery products found to infringe Ideal World's copyright, as well as all brochures, stationery, wrappers, labels, and other advertisements that would violate the award of injunctive relief; (5) that Duracell pay over to Ideal World all gains, profits, and advantages realized through the use of the Powercheck mark; (6) that Duracell compensate Ideal World for its actual damages; and (7) that Duracell pay for Ideal World's costs, including attorneys' fees and other expenses.

As discovery in this matter has progressed, Ideal World has narrowed the relief that it seeks. In a December 10, 1996 response to Duracell's First Set of Interrogatories, Ideal World indicated that it "believes it has suffered damage to its reputation and goodwill as a result of defendant's actions.... [but] has not yet quantified this damage." Affidavit of Marie V. Driscoll in Support of Motion to Strike Jury Demand ("Driscoll Aff."), at Exh. 2. In addition, Ideal World indicated that it had "not yet determined what sales, if any it has lost ... as a result of defendant's actions." *Id.* In its March 5, 1997 response to Duracell's First Request for Admissions, Ideal World admitted that it had not suffered any quantifiable lost sales from Duracell's use of the Powercheck mark. Further, by letter dated March 14, 1997, Ideal World's attorneys confirmed that Ideal World would not be seeking monetary damages for lost sales or loss of reputation or good will. Driscoll Aff. at Exh. 5.

It is Duracell's contention that because Ideal World has withdrawn its request for damages, Ideal World is not entitled to a

trial by jury because the remaining relief that Ideal World seeks—an injunction, the surrender of infringing products, the disgorgement of profits, and the assessment of costs and attorneys' fees—is entirely equitable in nature. Implicit in this argument, of course, is the concession and recognition that Ideal World was entitled to a jury on its withdrawn damage claims. Ideal World contends that disgorgement of profits is akin to a legal damage remedy, and that a trial by jury is therefore assured by the Seventh Amendment.

The Court notes that a number of district courts have considered this precise issue, and that all, save one, have concluded that a demand for disgorgement of profits does not entitle a plaintiff to a jury trial. Neither the Second Circuit nor any other circuit has expressly addressed the issue. For the reasons that follow, the Court adopts the minority position and concludes that Ideal World is entitled to a jury trial.

## DISCUSSION

■ The Lanham Act was enacted "to protect the public so it may buy a product bearing a particular trademark with confidence that it will get the product it wants and to protect the holder of the mark's investment in time and money from its misappropriation by pirates and cheats." *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 105 (2d Cir.1988). Because the Act does not specifically provide for trial by jury, the question of whether Ideal World is entitled to a jury trial must be resolved by looking to the scope of the jury trial right contained in the Seventh Amendment. The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." The term "suits at common law" as used in the amendment "refers to 'suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered.'" *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990)(quoting *Parsons v. Bed-*

*ford*, 3 Pet. 433, 447, 28 U.S. 433, 7 L.Ed. 732 (1830)) (emphasis in original); *see also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 375–76, 116 S.Ct. 1384, 1389, 134 L.Ed.2d 577 (1996). In order to determine whether a particular action will resolve legal rights, the Court must look to (1) the nature of the issues involved; and (2) whether the remedy sought is legal or equitable in nature. *Terry*, 494 U.S. at 565; *see also Tull v. United States*, 481 U.S. 412, 417–418, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). The Supreme Court has held that the second inquiry is the more important. *Terry*, 494 U.S. at 565. However, it bears noting that in cases involving both legal and equitable claims, a request for a jury trial in respect to the legal claims cannot be defeated by the mere presence of the equitable claims. *See Tull*, 481 U.S. at 425; *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472–473, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323, 1329 (2d Cir.1993).

■ Trademark law draws on principles developed both at law and in equity. *See Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 364 (6th Cir.1985). Although in England and the United States, both equity and law courts were empowered to decide trademark cases, most suits for trademark infringement were brought in equity "because injunctive relief was generally considered the first and most effective step for courts to take in redressing a trademark infringement," *id.* (citing F. Schechter, The Historical Foundations of the Law Relating to Trademarks, at 122–145 (1925)), and because courts of equity were additionally empowered to award damages or profits as incidental relief. *See Oxford Indus., Inc. v. Hartmarx Corp.*, 1990 WL 65792 (N.D.Ill. May 2, 1990) (citing G. Ropski, The Federal Trademark Jury Trial—Awakening of a Dormant Constitutional Right, 70 Trademark Rep. 177, 179–180 (1980)); *see also* 1 Pomeroy's Equity Jurisprudence § 181, at 257–258 (Symons 5th ed.1941).

Since trademark infringement cases were traditionally brought both at law and in equity, the subject matter of this case—the first prong of the Supreme Court's test in *Terry*— does not aid in resolving whether Ideal

World is entitled to a trial by jury. The Court thus turns to the second, more important prong—whether the remedy sought by Ideal World is legal or equitable in nature. Ideal World does not contest Duracell's argument that Ideal World's demands for an injunction, the impoundment and destruction of infringing materials, and the assessment of costs and attorneys' fees are entirely equitable in nature. *See American Soc. for the Prevention of Cruelty to Animals v. Alexanian,* 1995 WL 580276, at *1 (S.D.N.Y. Oct.3, 1995); *Partecipazioni Bulgari, S.p.A. v. Meige,* 1988 WL 113346, at *3 (S.D.Fla. May 23, 1988). Rather, the dispute between the parties centers upon whether Ideal World's demand for the disgorgement of Duracell's profits is akin to a legal damage remedy, or is in the nature of equitable relief based upon Duracell's alleged unjust enrichment.

Disgorgement of profits as a remedy for trademark infringement is authorized by 15 U.S.C. § 1117(a), which provides, in pertinent part, that a plaintiff who is able to establish a violation of the Act "shall be entitled ... subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." However, successful plaintiffs are not automatically entitled to disgorgement of profits. *See Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947); *BASF Corp. v. Old World Trading Co.,* Inc., 41 F.3d 1081, 1096 (7th Cir.1994). In fact, the Second Circuit has held that a trademark plaintiff is not entitled to *any* monetary award, either in the form of damages or profits, " 'where an injunction will satisfy the equities of the case' and where 'there has been no showing of fraud or palming off.' " *Getty Petroleum Corp.,* 858 F.2d at 111 (quoting *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena,* 433 F.2d 686, 706–707 (2d Cir.1970))(other internal quotations omitted). Moreover, even if injunctive relief alone does not satisfy the equities of the case, a trademark plaintiff will still be unable to obtain a defendant's profits unless it can prove that the infringer acted with willful deception. *George Basch Co., Inc. v. Blue Coral, Inc.,* 968 F.2d 1532, 1540 (2d Cir.1992); *see also Banff, Ltd. v. Colberts, Inc.,* 996 F.2d 33, 35 (2d Cir.1993).

In *George Basch Co., supra,* the Second Circuit observed that three rationales have traditionally been given to warrant an assessment of profits: the unjust enrichment of the infringer, the actual damages sustained by the plaintiff, and the need to deter future misconduct. *Id.* at 1537. The dispute between the parties centers upon the difference, if any, between the first and second rationales. Thus, Duracell maintains that an award of profits in this case would necessarily rest upon a finding that Duracell had been unjustly enriched, which it characterizes as invoking the Court's equitable powers, while Ideal World maintains that an award of profits may in fact serve as a surrogate damage award, which would arguably render the award legal and not equitable.

In sorting out these arguments, the Court turns first to the language of the Second Circuit in *Basch.* In respect to the "damage" rationale for assessing profits, the Second Circuit noted that "[h]istorically, an award of defendant's profits has ... served as a rough proxy measure of plaintiff's damages .... [since d]ue to the inherent difficulty in isolating the causation behind diverted sales and injured reputation, damages from trademark ... infringement are often hard to establish." *George Basch Co.,* 968 F.2d at 1539; *see also Getty Petroleum Corp.,* 858 F.2d at 111 (noting that provision in Lanham Act permitting recovery based on infringer's profits "was simply a recognition of the problems of proof facing plaintiffs, and that if amount proven is inadequate, 'a reasonable sum in the way of ordinary damages ought to be awarded.' ")(quoting Trade–Marks: Hearings on H.R. 102, H.R. 5461, and S. 895 Before the Subcomm. on Trade-marks of the House Comm. on Patents. 77th Cong., 1st Sess. 205 (1941)("1941 Hearings")); *Monsanto Chem. Co. v. Perfect Fit Prods. Mfg. Co., Inc.,* 349 F.2d 389, 395–396 (2d Cir.1965)(allowing an award of profits to plaintiff, despite the fact that it had been unable to prove directly that the reputation of its trademark had been injured by defendant, since "it seems obvious that there must have been some economic injury to [plaintiff], such as loss of sales to legitimate producers and the

loss of the goodwill of some of the retail purchasers of [defendant's products].").

Furthermore, although profits and damages are, as a practical matter, two very different concepts, in that "damages directly measure the plaintiff's loss, [while] defendant's profits measure the defendant's gain," *George Basch Co.*, 968 F.2d at 1540, it is clear from the Second Circuit's language in *Basch* that, in the context of trademark infringement, there is a significant overlap between them. Whether the plaintiff seeks profits or damages, it must demonstrate that the defendant's infringing conduct caused actual consumer confusion or deception. *See International Star Class Yacht Racing Assn. v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir.1996); *George Basch Co.*, 968 F.2d at 1538; *see also New York Racing Ass'n, Inc. v. Stroup News Agency Corp.*, 920 F.Supp. 295, 300 (N.D.N.Y.1996). In addition, like an award of damages, an award of profits must be predicated upon an actual showing of concrete injury. *See Vuitton et Fils, S.A. v. Crown Handbags*, 492 F.Supp. 1071, 1077 (S.D.N.Y.1979), *aff'd* 622 F.2d 577 (2d Cir.1980).

Although the Second Circuit has articulated unjust enrichment as a separate basis for awarding profits in a trademark case, an award premised upon unjust enrichment also depends upon a showing that sales that would otherwise have gone to the plaintiff were diverted to the infringing party. *George Basch Co.*, 968 F.2d at 1538. Thus, the unjust enrichment theory "is simply another way of formulating the element of consumer confusion required to justify a damage award under the Lanham Act." *Id.* The articulation of the unjust enrichment rationale as a separate basis for awarding profits appears to be a historical accident, traceable to the traditional separation between law and equity. As the Supreme Court has observed, in courts of equity the infringer was required to turn over its profits to the plaintiff upon the theory that the infringer would be deemed to hold its profits in constructive trust for the wronged party. *See Hamilton–Brown Shoe Co. v. Wolf Brothers & Co.*, 240 U.S. 251, 259, 36 S.Ct. 269, 60 L.Ed. 629 (1916). However, it is important to point out that absent anoth-

er ground for jurisdiction, such as the request for an injunction, a court of equity did not have jurisdiction to award profits, which were viewed as incidental to the injunctive relief and represented compensation for the plaintiff's damages. *George Basch Co.*, 968 F.2d at 1538 (quoting *Hamilton–Brown Shoe Co.*, 240 U.S. at 259).

The district courts that have held that a demand for disgorgement of profits does not entitle plaintiffs to a jury trial have simply reasoned that disgorgement is an equitable remedy. *See, e.g., G.A. Modefine S.A. v. Burlington Coat Factory Warehouse Corp.*, 888 F.Supp. 44 (S.D.N.Y.1995) (disgorgement of profits an equitable remedy; no right to trial by jury); *Merriam–Webster, Inc. v. Random House, Inc.*, 1993 WL 205043, at *3 (S.D.N.Y.1993) (same); *Partecipazioni Bulgaria*, S.p.A., 1988 WL 113346, at *3 (same); *American Cyanamid Co. v. Sterling Drug, Inc.*, 649 F.Supp. 784 (D.N.J.1986). In *G.A. Modefine*, the district court for the Southern District of New York reinforced its conclusion by interpreting *Basch* as standing for the proposition that awards of profits in trademark suits originated in courts of equity. *G.A. Modefine*, 888 F.Supp. at 45. The court, however, did not cite to the language in *Basch* regarding the damages rationale for profit awards, nor did the court acknowledge that a request for disgorgement of profits was not an independent basis for equitable jurisdiction at common law.

The one district court that held that a jury trial is warranted observed that: (1) trademark actions were historically legal; (2) an accounting for profits was not granted by courts of equity unless there was some other basis for equitable jurisdiction; (3) an award of profits in the trademark context is more like an award of damages than restitution; and (4) any doubts should be resolved in favor of a jury trial. *Oxford Indus.*, 1990 WL 65792, at *8.

Having considered the Second Circuit's language in *Basch* and the other cases that discuss the origins of profit awards in trademark cases, the Court concludes that the solitary minority position embraced by the *Oxford* court is correct, and that Ideal World is entitled to a jury trial. Although the

Court does not agree with the *Oxford* court's observation that trademark actions were historically purely legal, the *Oxford* court correctly noted that a request for disgorgement of profits was not, at common law, an independent basis for equitable jurisdiction, but rather was considered ancillary relief that was intended to make the wronged party whole. *See Hamilton–Brown Shoe Co.*, 240 U.S. at 259. Further, a consideration of the relevant case law indicates that an award of profits has largely served a remedial function in trademark cases, designed to compensate plaintiffs for diverted sales and to address the difficulties of proof inherent in such cases. Moreover, while the Court recognizes that the Second Circuit in *Basch* indicated that unjust enrichment and damages are two separate rationales for profit awards, the Court notes that both are premised upon a showing of consumer confusion and diverted sales. The Court simply cannot conclude that a right as fundamental as the Seventh Amendment right to a jury trial can be made to depend upon subtle distinctions between the two rationales, distinctions that appear to be the accidental result of the traditional schism between law and equity rather than distinctions that have any tangible or practical significance. To that extent, the Court's decision is consistent with the Supreme Court's decision in *Dairy Queen, supra*, in which the court held that the mere fact that a trademark infringement complaint asked for an "accounting" instead of "damages" was not determinative, and that "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." *Dairy Queen*, 369 U.S. at 477–478.

The Court's decision is in no way undermined by the fact that awards of profits must be made "subject to the principles of equity," 15 U.S.C. § 1117(a), because by its own terms, § 1117(a) provides that awards of damages, which are indisputably legal, are also subject to equitable principles.[1] In fact, the statute makes no distinction between the two remedies in this regard, emphasizing that as to both profits *and* damages, courts have considerable discretion in the shaping of an appropriate remedy according to the circumstances of each individual case. Thus, a court is permitted to enter judgment in an amount up to three times the sum found to constitute actual damages; similarly, in respect to profits, "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a). However, it is important to point out that any such sums awarded "shall constitute compensation and not a penalty." *Id.* This language lends support to the Court's conclusion that an award of profits is intended to be compensatory and is therefore akin to a legal damages remedy.

Moreover, the language of § 1117(a) also suggests strongly that, like damages, the actual calculation of profits should be made by the jury. Section 1117(a) provides, in pertinent part, that "[t]he court shall assess such profits and damages *or cause the same to be assessed under its direction*" (emphasis added). Thus, the statute treats both profits and damages together, making no separate provision for the manner in which profits are calculated. Although the Second Circuit has not expressly addressed whether this function is properly undertaken by a jury, *see George Basch Co.*, 968 F.2d at 1541 ("[b]ecause we hold that an accounting was not available in this case, we need not reach the issue of whether it was appropriate for the jury to calculate profits"), the Court notes that Judge Kearse, dissenting in part in *Basch*, suggested that assessment of profits was properly a jury function. *See Basch*, 968 F.2d at 1543. In sum, given the marked similarity between the treatment of damages and profits in the trademark context, the Court determines that there is no reason why a properly instructed jury could not assess profits in the same way as it would be

---

**1.** This language was added in the final draft of the Lanham Act, and the only explanation for its inclusion in the Act is contained in a 1941 letter to Representative Lanham, which stated: " 'It seems clear that the normal principles of equity in respect of allowance of and defenses to an accounting of profits and the recovery of damages are not affected by this bill.' " *Getty Petroleum Corp.*, 858 F.2d at 111 (quoting 1941 Hearings at 228).

expected to fix damages, subject to the Court's considerable discretion, pursuant to § 1117(a), in ultimately shaping an appropriate remedy. *See generally Colwell v. Suffolk County Police Dep't,* 967 F.Supp. 1419, 1436–1437 (E.D.N.Y.1997) (in case arising under Americans With Disabilities Act, award of future compensatory damages reduced by Court in exercise of its equitable powers).

### CONCLUSION

For the foregoing reasons, Duracell's motion to strike the jury demand is denied.[2]

**SO ORDERED.**

---

**2.** In light of the paucity of appellate authority on this issue, the Court invites submissions from the parties as to whether the issue of Ideal World's entitlement to a jury trial should be certified to the Second Circuit Court of Appeals pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.