## NATIONAL IRANIAN OIL COMPANY, Plaintiff,

v.

## ASHLAND OIL, INC., Defendant.

### Civ. A. No. J85–1064(L).

United States District Court, S.D. Mississippi, Jackson Division.

March 7, 1989.

Alex A. Alson, Jr., Charles R. Davis, Jackson, Miss., Stephen M. Truitt, Susan L. Launer, Pepper, Hamilton & Scheetz, Washington, D.C., for plaintiff.

Lewis Bell, Wm. F. Goodman, Jr., Jackson, Robert J. Brookhiser, Jr., Howrey & Simon, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This diversity action arises out of agreements executed between Ashland Oil, Inc. (Ashland) and National Iranian Oil Company (NIOC) in 1979 for the purchase and sale of crude oil. NIOC brought this action against Ashland alleging breach of contract based on Ashland's failure to pay NIOC for certain of the oil shipments made pursuant to the contract. Ashland, in turn, has advanced a counterclaim against NIOC; counts I through VI of its counterclaim arise out of the contract dispute, and counts VII through XII may be described generally as conspiracy claims arising out of events occurring several years later. Ashland has demanded a trial by jury in its answer and counterclaim. However, NIOC has in its answer denied that Ashland has a right to a jury trial. Presently before the court is Ashland's motion to strike NIOC's denial of Ashland's demand for jury trial and for an order declaring Ashland's right to trial by jury.[1]

### ASHLAND'S RIGHT TO JURY TRIAL ON NIOC'S CLAIM

▮ NIOC asserts that Ashland implicitly waived its seventh amendment right to jury trial by agreeing to arbitrate its contract disputes with NIOC. Specifically, the contracts for the sale of crude oil which are at issue in this case and in particular a March 11, 1979 "Heads of Agreement" and an April 11, 1979 contract, specified arbi-

---

1. At the time of the filing of this motion, Ashland had not yet amended its answer and counterclaim to include counts VII through XII. By this opinion and order the court resolves the jury trial issue as to all claims asserted by the parties to date.

tration as the dispute resolution mechanism. The Fifth Circuit has previously affirmed this court's denial of NIOC's application to compel arbitration in Mississippi based on its conclusion that the arbitration agreement is not specifically enforceable.[2] *National Iranian Oil Co. v. Ashland Oil,* 817 F.2d 326 (5th Cir.), *cert. denied,* 484 U.S. 943, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987). Nevertheless, NIOC reasons that despite the unenforceability of the arbitration clause, this dispute should be tried in the manner which most closely approximates arbitration, *i.e.,* nonjury, in order to "give effect insofar as possible" to the intent of the parties in agreeing that any disputes be settled by arbitration since, in so agreeing, the parties implicitly waived any right to trial by jury. In the court's opinion, this argument is without merit. It is clear that the implicit waiver of trial by jury in an agreement to arbitrate constitutes a waiver of the entire litigation process in the judicial system; if a dispute nevertheless ends up in the courts, it stands to reason that the litigation is to proceed without an attempt on the court's part to somehow mimic arbitration. In such cases, the full judicial process, including any right to a jury trial which may have existed, becomes available to the parties. To hold otherwise could lead to such illogical consequences as the denial of the discovery process in litigation between parties that had agreed to but are precluded from arbitrating their dispute.

Ashland cannot be held to have waived its right to a jury as to NIOC's claims against it since the relinquishment of that right was intended only when the parties expected that there would in fact be arbitration. Thus, because Ashland has not waived its right, it is entitled to a jury trial on the claims brought by NIOC.

## TRIAL OF THE COUNTERCLAIM

The more complicated question for determination is whether Ashland's counterclaim is to be tried with or without a jury. NIOC asserts that Ashland is not entitled to a jury trial on its counterclaim because a jury trial is prohibited under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1441(d) and 1602–11 (FSIA). In support of this contention, NIOC relies principally on 28 U.S.C. § 1330(a), which provides the basis for jurisdiction in federal courts over actions against foreign states or instrumentalities:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

The FSIA specifically includes in its definition of "a foreign state" entities that are owned by the sovereign, 28 U.S.C. § 1603, and in this case, there is no dispute that NIOC is a "foreign state" within the meaning of the FSIA.[3]

■ No cases have been found which directly address the issue of the availability of a jury trial on counterclaims against a foreign state. The court does conclude, however, and indeed it is clear, that Ashland has no *right* to a jury trial on the counterclaim. The source of a party's entitlement to a jury trial may be constitutional, *i.e.,* the seventh amendment, or stat-

---

**2.** The court determined that a forum selection clause of the arbitration agreement which designated Iran as the seat of arbitration could not be severed from the remainder of the arbitration clause and thus concluded that it could not compel a Mississippi arbitration.

**3.** Section 1603(b) of the FSIA defines an "agent or instrumentality of a foreign state" as an entity:

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under laws of any third country.

utory, and, in appropriate cases, the court may even in the absence of a constitutional or statutory grant of a jury trial permit trial by jury to promote important federal policies. *See Goar v. Compania Peruana de Vapores*, 688 F.2d 417, 428 (5th Cir. 1982) (citing *Byrd v. Blue Ridge Rural Electric Cooperative*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958)). Here, it is well settled that the seventh amendment's reference to "suits at common law" does not include suits against a foreign sovereign, as such suits were unknown at the time the seventh amendment was adopted. *See Arango v. Guzman Travel Advisers*, 761 F.2d 1527, 1534 (11th Cir.), *cert. denied*, 474 U.S. 995, 106 S.Ct. 408, 88 L.Ed.2d 359 (1985); *Goar*, 688 F.2d at 424; *Rex v. Cia. Pervana de Vapores, S.A.*, 660 F.2d 61, 69 (3d Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *Williams v. Shipping Corp. of India*, 653 F.2d 875, 882 (4th Cir.1981), *cert. denied*, 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982).[4] Neither is there a statutory right to a jury trial that the court can discern. Finally, the court is aware of no federal policy which would favor a jury trial under these facts. To the contrary, as is discussed *infra*, there exists a strong federal policy favoring nonjury trials of claims against a foreign state. Therefore, the real questions are whether NIOC has some "right" to a nonjury trial, or whether this court could, under some theory, *allow* a jury trial of Ashland's counterclaim.

### The Foreign Sovereign Immunities Act

■ The FSIA, enacted in 1976, represents a comprehensive codification of the then existing international law with respect to sovereign immunity of foreign states. *Unidyne Corp. v. Government of Iran*, 512 F.Supp. 705, 709 (E.D.Va.1981). A primary purpose of the statute was to place the responsibility for determinations regarding foreign nations' claims to sovereign immunity in the judicial branch, rather than the executive branch, and thereby depoliticize sovereign immunity decisions.

*National Airmotive Corp. v. Government and State of Iran*, 499 F.Supp. 401, 406 (D.D.C.1980); 28 U.S.C. § 1602. Along with the substantive portions of the FSIA, which set forth the rules for determining under what circumstances a foreign state will be accorded immunity, 28 U.S.C. §§ 1602–1611, Congress enacted section 1330, which provides for federal district court original jurisdiction of "any nonjury civil action against a foreign state ... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement." Ashland urges that the nonjury proscription of section 1330 is inapplicable in the case *sub judice* since its claim against NIOC is not an "action against a foreign state."

■ Ashland's claim in this regard is based on a tortured structural analysis of the FSIA. Its first such argument is premised on the language of section 1607 of the FSIA which, in general, provides that sovereign immunity will not be accorded a foreign state with respect to counterclaims (a) for which the foreign state would not be immune had the claim been brought in a separate action against the foreign state, (b) which are compulsory, or (c) which constitute a set-off. Ashland reasons that if the nonjury proscription embodied in section 1330 had been meant to apply to counterclaims, such a proscription would have been included in section 1607. This argument, however, ignores the distinction in purpose between sections 1607 and 1330.

Section 1607 establishes the standards by which sovereign immunity is to be determined, *i.e.*, it codifies the substantive law of sovereign immunity. These standards apply equally in state and federal courts, assuming that subject matter jurisdiction otherwise exists. *Cf. Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 496–97, 103 S.Ct. 1962, 1972–73, 76 L.Ed.2d 81 (1983) (FSIA concerns more than access to federal courts; it governs types of ac-

---

4. All of these cases reached this conclusion with reference to the nonjury provision of the FSIA, which, as previously noted, includes a govern-

ment-owned company such as NIOC within its definition of a "foreign state."

tions for which foreign sovereigns may be held liable in courts of United States, whether federal or state). Section 1330 fulfills the more specific objective of granting to the federal district courts subject matter jurisdiction over actions as to which the foreign state has no immunity. Thus, section 1607 does not directly address the method of trial in actions involving foreign sovereigns, and in particular the availability or nonavailability of a jury, since this becomes an issue only with respect to *federal* district court jurisdiction; there is no prohibition against jury trials for claims or counterclaims brought against a foreign state in state court. In short, section 1607 is not where one would expect to find specifics regarding federal court jurisdiction since the statute itself is not so limited.[5]

Ashland's attempt to derive support for its position from 28 U.S.C. § 1441(d), the removal provision of the FSIA, is equally unavailing. Section 1441(d) allows a foreign sovereign to remove to federal court any civil action filed against it in state court and provides that such action will be tried by the court without a jury. Ashland reasons that had Congress intended that counterclaims against a foreign state be tried nonjury, it would have provided a means for that sovereign to remove from state court to federal court any counterclaims and would have made specific provision for those counterclaims to be tried by the court. However, Congress could have reasonably concluded such a removal provision for counterclaims to be unnecessary, since a foreign sovereign as plaintiff would usually have the option of filing in federal court under the diversity statute, thereby avoiding the risk of a jury trial on any counterclaims that might be asserted by the defendant.

In addition to the inherent weaknesses in Ashland's attempts to glean congressional intent by way of its faulty analysis, Ashland has, in the court's view, completely ignored the plain language of section 1330. In its grant of original jurisdiction to district courts of nonjury civil actions against a foreign state, section 1330 specifically states that jurisdiction is given "as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity ... under ... section 1607"; section 1607, as noted above, sets forth the three specific circumstances in which a foreign state will not be immune to a counterclaim. Immunity with respect to counterclaims is the *sole* subject of section 1607. Hence, the reference in section 1330 to section 1607 can refer to nothing other than counterclaims. It follows that the phrase "action against a foreign state" was intended to refer not only to a direct claim against a foreign sovereign but also to a counterclaim against it. This interpretation, which restricts federal court jurisdiction to nonjury counterclaims, is also consistent with the stated congressional purpose of promoting "uniformity in decision" in "cases involving foreign governments." H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 13 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6611–12. In this vein, the Fifth Circuit has stated, "Congress has expressed a strong policy favoring uniformity of decision in cases involving foreign sovereigns and has found that this policy is best served by trial without a jury." *Goar*, 688 F.2d at 428. Certainly, the goal of uniformity in decision could be severely undermined by permitting a jury trial of a counterclaim to the same extent as by a jury trial of the direct claim.[6]

---

5. Similarly, section 1605, which embodies the substantive law of sovereign immunity with respect to lawsuits brought against a foreign state and is therefore a counterpart to section 1607, makes no mention of the fact that federal courts have jurisdiction only of nonjury trials in such cases.

6. Ashland also urges that NIOC may not now contend that it is entitled to a nonjury trial because NIOC previously argued to the Bermuda courts that parallel litigation in those courts should not be stayed because of the risk that NIOC would be subjected to a jury trial in the present litigation. This innovative argument on the part of Ashland, couched in terms of "waiver" and "estoppel," is without merit. As has been previously discussed, the nonjury provision of section 1330 is a limit upon this court's subject matter jurisdiction. It is elementary that no waiver, agreement, stipulation or other such action by a party may operate to expand

Additional support for the court's conclusion that the nonjury mandate of section 1330 is applicable to counterclaims against a foreign sovereign derives from the somewhat analogous area of the law concerning actions brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346 and 2402, which prohibits jury trials in actions against the United States. As to the availability of a jury trial in actions involving the United States, it has been said that

> regardless of the formal posture of the United States in the litigation[,] ... if a claim is asserted against the United States, there is no right to trial by jury unless granted by statute, even though the action was commenced by the United States.

9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2314, at 71 (1981) (citing *United States v. Rosati*, 97 F.Supp. 747, 749 (D.N.J.1951), and *United States v. Schlitz*, 9 F.R.D. 259 (E.D.Va.1949)). In the *Rosati* case, relied on by Wright and Miller, the court specifically concluded that the nonjury requirement of the FTCA applied to counterclaims against the United States.[7]

### Ancillary Jurisdiction

▇▇▇ Ashland argues that, even assuming section 1330's nonjury restriction applies to counterclaims, its claims which arise out of the same transaction or occurrence as NIOC's claim against Ashland require no independent basis for jurisdiction and accordingly, section 1330 need not even be considered. Stated another way, Ashland contends that the court has ancillary jurisdiction over compulsory counterclaims tried by a jury. Ashland's argument presumes a jurisdictional scheme in which all possible bases of jurisdiction, including ancillary jurisdiction in a diversity case such as this, comprise a menu from which a party may select the jurisdictional basis which best suits its purposes. However, case authority indicates that this simplistic view is not

always appropriate. For example, in *Greater New Orleans Stage Motion Picture v. W.H. Bower Spangenberg, Inc.*, 587 F.Supp. 1307 (E.D.La.1984), the plaintiff attempted to circumvent the specific jurisdictional requirements of the statute upon which its claim was based by simply asserting that jurisdiction was predicated more generally on the existence of a federal question. The court rejected this argument, reasoning that "[w]hile general jurisdictional provisions are important when the Act of Congress does not have its own special jurisdictional statute, it adds nothing to one that does." *Greater New Orleans Stage*, 587 F.Supp. at 1310.

This principle applies to claims brought under the FSIA. In *Ruggiero v. Compania Peruana de Vapores "Inca Capac Yupanqui,"* 639 F.2d 872 (2d Cir.1980), the plaintiffs argued that the defendant, in addition to its being a foreign state within the meaning of section 1330, was also a citizen or subject of a foreign state under section 1332(a)(2), and thus jurisdiction could be premised upon diversity of citizenship. In an opinion by Judge Friendly, the Second Circuit rejected this argument:

> The conclusion is inescapable from the language of the statute that Congress meant § 1330 to be the exclusive means whereby a plaintiff may sue any foreign state as defined in § 1603(a), at least on the basis of diversity jurisdiction theretofore provided in § 1332(a)(2), and that this entails a non-jury trial.

*Ruggiero*, 639 F.2d at 875–76. The plaintiffs also argued that jurisdiction could be premised upon section 1331. Judge Friendly analyzed the relationship between 28 U.S.C. §§ 1330, 1331 and 1332 as follows:

> We can think of no reason why Congress would wish a plaintiff suing a foreign state on a claim arising under the Constitution, a law or a treaty of the United States to have a jury trial whereas a person suing on a nonstatutory claim

---

the subject matter jurisdiction of a federal court.

**7.** Legislative history of the FSIA indicates that it was in this respect patterned after the FTCA: "As in suits against the U.S. Government, jury

trials are excluded. See 28 U.S.C. 2402." H.R. Rep. No. 94–1487, 94th Cong., 2d Sess. 13 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6611.

would not. If any distinction were to be made, it would run the other way. The courts must learn to accept that, in place of the familiar dichotomy of federal question and diversity jurisdiction, the Immunities Act has created a tripartite division—federal question cases, diversity cases and actions against foreign states. If a case falls within the third division, there is to be no jury trial even if it might also come within one of the other two.

*Id.* at 876. The Fifth Circuit, citing *Ruggiero,* has also explicitly held that section 1330(a) provides the exclusive basis for federal jurisdiction in suits against corporations owned by foreign states. *Goar,* 688 F.2d at 421; *accord Rex v. Cia. Pervana De Vapores, S.A.,* 660 F.2d 61, 65 (3d Cir. 1981); *Williams v. Shipping Corp. of India,* 653 F.2d 875, 881 (4th Cir.1981), *cert. denied,* 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982).

Since the terms and conditions of an applicable specific jurisdictional statute must be adhered to even though a more general jurisdictional statute could otherwise apply to a given claim, logic dictates that the judge-made doctrine of ancillary jurisdiction cannot be used to avoid specific statutory jurisdictional requirements. The fact that some of Ashland's claims in this case may arise from "a common nucleus of operative fact," a common basis for the exercise of ancillary jurisdiction, does not end the court's inquiry into whether it has the power to grant Ashland a jury trial on its counterclaim. *See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 371, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274 (1978). Rather, the court must examine whether Congress has expressly or by implication negated the exercise of the powers of ancillary jurisdiction. *See id.* at 371–72, 98 S.Ct. at 2401–02. In this case, that examination leads to the inescapable conclusion that the use of the doctrine of ancillary jurisdiction to allow a jury trial of Ashland's counterclaim would defeat congressional intent. The reference in section 1330 to section 1607, which deals only with counterclaims, indicates conclusively that Congress intended that any "action against a foreign state," whether a direct claim or a counterclaim, be tried without a jury. The court cannot, in clear disregard of this, purport to exercise ancillary jurisdiction simply to afford a jury trial to Ashland.

## TREATY OF AMITY

Ashland urges that the Treat of Amity, Economic Relations and Consular Rights between the United States of America and Iran, signed August 15, 1955, 8 U.S.T. 899, T.I.A.S. 3853, operates to give Ashland the right of jury trial against NIOC since application of the FSIA—and hence the nonjury mandate—is specifically made subject to existing international agreements to which the United States is a party. *See* 28 U.S.C. § 1604. Article XI of the treaty, in certain instances, operates as a waiver of immunity from "suit, execution of judgment, or other liability to which privately owned and controlled enterprises are subject therein." Thus, Asland urges that NIOC is precluded by the treaty from claiming immunity from this suit or from the normal procedures of this court. In essence, Ashland claims that the Treaty of Amity provides an alternative basis for federal jurisdiction in an action against a foreign state, and in support of that proposition, cites *Marschalk Co. v. Iran Nat'l Airlines,* 518 F.Supp. 69 (S.D.N.Y.), *rev'd on other grounds,* 657 F.2d 3 (3d Cir.1981). Indeed, in *Marschalk,* the court did state that, in the case before it, a congressional grant of jurisdiction could be found in 28 U.S.C. §§ 1330, 1332 and the Treaty of Amity. However, the emphasis of that opinion was on rebutting any possible claim that the court lacked subject matter jurisdiction and not necessarily determining the specific basis of that jurisdiction. Although the Treaty of Amity operates as a waiver of sovereign immunity in certain situations and thus may be considered "jurisdictional" in the same sense as sections 1602 *et seq.* of the FSIA might be, neither the treaty nor the substantive portions of the FSIA, as stated above, deal specifically with access to *federal* courts; they do not provide for federal jurisdiction but rather

operate to remove what would otherwise be an impediment to the exercise of jurisdiction, that being sovereign immunity, and they therefore perform a different function than does 28 U.S.C. § 1330.[8] Ashland simply does not have the "option" of alleging as a jurisdictional basis for its counterclaim the Treaty of Amity.

Further, Ashland's argument that Iran has somehow agreed to trial by jury pursuant to Article XI of the treaty is unpersuasive. Although this section of the treaty does act as a waiver of immunity from "suits ... or other liability" in certain instances, it does not address or concern the mode or procedure by which such suit is brought or "other liability" is established, and in the court's view, a jury trial simply cannot under any plausible construction of this section be considered to be a "liability" concerning which Iran has waived immunity.

## CONCLUSION

Ashland is entitled to a jury trial on NIOC's claim but has no constitutional or statutory right to a jury trial on the counterclaim. Additionally, there is no federal policy favoring a jury trial in this circumstance. To the contrary, as the Fifth Circuit has recognized, trial by jury serves to promote Congress' goal of uniformity in decisions involving foreign sovereigns. *Goar*, 688 F.2d at 428. Thus, even if the FSIA were not directly applicable to the counterclaim, there still exist important federal policy considerations favoring a nonjury trial. No "elastic and ill-defined notions of ancillary jurisdiction," *American Nat'l Bank and Trust Co. of Chicago v. Bailey*, 750 F.2d 577, 581 (7th Cir.1984), *cert. denied*, 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985), can properly be used to overcome this explicitly stated congressional policy. The counterclaim should be tried without a jury in accordance with the provisions of the FSIA.

**8.** This observation is made simply to reinforce the point that various statutes (and treaties) should not be assumed to perform equivalent

It is therefore ordered that Ashland's motion is granted in part and denied in part as provided hereinabove.

ORDERED.

functions just because they may all be considered to provide subject matter jurisdiction.