**RINGLING BROS.–BARNUM & BAILEY COMBINED SHOWS, INC., Plaintiff,**

**v.**

**UTAH DIVISION OF TRAVEL DEVELOPMENT, Defendant.**

**Civil Action No. 1:96cv0788.**

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 21, 1997.

Stephen M. Colangelo, John F. Anderson, McGuire Woods Battle & Boothe, L.L.P., McLean, VA (Steven B. Pokotilow, Laura E. Goldbard, Stroock & Stroock & Lavan, New York City, of counsel), for Plaintiff.

Jan Graham, Attorney General, Jerrold S. Jensen, Ralph L. Finlayson, Assistant Attorneys General, Salt Lake City, UT, for Defendant.

### MEMORANDUM OPINION

ELLIS, District Judge.

This trademark action presents the novel question whether a jury trial is available for a cause of action brought under the new anti-dilution provision of the Lanham Act ("the Act"), 15 U.S.C. § 1125(c).

### I.

Ringling Bros.–Barnum & Bailey Combined Shows, Inc. ("Ringling") operates a

well-known circus which has advertised and promoted its product for more than a century using the mark THE GREATEST SHOW ON EARTH. This trademark was registered in 1961, receiving U.S. Trademark Registration No. 724,946, and was renewed in 1981.[1]

Utah Division of Travel Development ("Utah") uses the mark THE GREATEST SHOW ON EARTH on license plates, advertisements, and other promotions in an effort to attract visitors to Utah's recreational and scenic resorts. This mark was registered in Utah in 1975 and has been used continuously since 1966.[2] In 1988, Utah applied to the Patent and Trademark Office for federal registration of its mark, THE GREATEST SHOW ON EARTH. Ringling opposed this application, but its opposition was dismissed by a unanimous decision of the Trademark Trial and Appeal Board.[3] One month later, Congress amended the Act to include a federal cause of action for dilution.[4] Thereafter, on June 6, 1996, Ringling filed this action.

### II.

■ Analysis properly begins by acknowledging that,

the question of the right to a jury in litigating a statutorily-created right should be decided as a matter of statutory construction rather than of constitutional interpretation whenever possible.

*Gnossos Music v. Mitken, Inc.,* 653 F.2d 117, 118–19 (4th Cir.1981). In other words, if the statute creating a legal right is properly interpreted to require a jury trial then the

1. Ringling also owns two other trademark registrations which include the mark THE GREATEST SHOW ON EARTH on a globe graphic, U.S. Trademark Registration Nos. 724,947 and 1,366,-779.

2. The record reflects that Utah did not use the mark in its winter sports advertising in three separate years during the period from the early 1960s to the present. For the purposes of this analysis, these breaks in Utah's otherwise continuous use are not significant.

3. Decision of Trademark Trial and Appeal Board on Opposition No. 81,828 to application No. 73/762,641 (December 13, 1995). In dismissing the opposition, however, the Trademark Trial and Appeal Board specifically found that dilution

was not a basis for opposing registration. *Id.* at 16. Federal registration was finally granted to Utah for its mark on January 21, 1997. For reasons that do not appear in this record, the proceedings leading to this result spanned nearly nine years.

4. In § 1127, the Act defines dilution as:

lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—
(1) competition between the owner of the famous mark and other parties, or
(2) likelihood of confusion, mistake, or deception.

constitutional issue need not, and should not, be reached. *See, e.g., Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J. concurring). On the other hand, if the statute (i) is ambiguous with respect to the right to a jury trial or (ii) expressly precludes that right, the Seventh Amendment must be consulted to determine if a jury trial is constitutionally required. *See Gnossos Music,* 653 F.2d at 118–19.

The Act nowhere explicitly refers to a jury. But this does not mean it is altogether silent on the subject. To the contrary, the Act's pertinent language makes clear the essentially equitable nature of the dilution claim and therefore reflects Congressional intent to commit the dilution cause of action to a court without a jury. Thus, to begin with, a plaintiff is limited "only to injunctive relief" unless it is shown that the party charged with dilution "willfully intended" to cause dilution or trade on plaintiff's mark. 15 U.S.C. § 1125(c)(2).[5] And this injunctive relief is "subject to the principles of equity and ... such terms as the court deems reasonable." 15 U.S.C. § 1125(c)(1). In the absence of willful intention to dilute, therefore, the Act's limitation to traditional equitable relief plainly means that Congress, conscious of centuries of settled jurisprudence excluding juries

in purely equitable matters, intended to commit a dilution claim to a court without a jury. *See Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–09 & n. 15, 79 S.Ct. 948, 954–56 & n. 15, 3 L.Ed.2d 988 (1959); *see also* 9 Wright & Miller, *Federal Practice and Procedure* § 2308 (1995) ("A statute will not be read as having created a right to a jury trial on a claim for an injunction unless Congress has expressly so provided.").

Even assuming evidence of willful intent, the Act's language points unerringly to the same conclusion. If willful intent is shown, a plaintiff may recover "subject to the discretion of the court and principles of equity" the damages specified in § 1117(a). 15 U.S.C. § 1125(c)(2). And § 1117(a) further specifies that any damage recovery is "subject to the principles of equity", and directs (i) that "[t]he court shall assess such profits and damages or cause the same to be assessed under its direction" and (ii) that "the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a).[6] These several references to "the court", the court's "discretion", and the "principles of equity" make clear that even where "willful intent" is demonstrated, Congress intended to commit dilution claims to a judge without a jury.[7]

---

**5.** Section 1125(c)(2) states:

In an action brought under this subsection, the owner of the famous mark shall be entitled only to injunctive relief unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner of the famous mark shall also be entitled to remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity.

**6.** Section 1117(a), states, in pertinent part:

the plaintiff shall be entitled, ... subject to the principles of equity, to recover (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction.... In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court

shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.... The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a). A showing of "willful intent" also permits a plaintiff to recover under § 1118, which allows a court, in its discretion, to order the production of all promotional materials in the possession of the defendant that bear the diluting mark in order that these materials can be destroyed.

**7.** This conclusion is not foreclosed by *Gnossos Music.* There, the Fourth Circuit analyzed the 1976 Copyright Act to determine if it provides a right to jury trial. 653 F.2d at 119. In the course of its analysis, the panel rejected the contention that a single reference in the Copyright Act to the award of damages "as the court considers just" indicated congressional intent for statutory damages to be determined without a jury. Instead, the panel held that "court" could

But the analysis does not end here, for as *Gnossos Music* teaches, where, as here, a statute creating a right of action precludes a jury,[8] or where a statute is ambiguous in this regard, the analysis must proceed to consider whether the Seventh Amendment compels that a jury be provided.[9]

## III.

█ It is not sufficient to find that the Act does not entitle a party to a jury trial. This is so because the Seventh Amendment requires a jury trial in the adjudication of any legal, as opposed to equitable, right, whether created by statute or common law. *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987). In other words, the Seventh Amendment trumps Congressional intent with respect to the jury trial issue where legal rights are adjudicated. And importantly, the Seventh Amendment has been construed to require that " 'any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.' " *Beacon Theatres,* 359 U.S. at 501, 79 S.Ct. at 952 (quoting *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603

(1935)). Accordingly, Ringling's dilution claim must be analyzed under the Seventh Amendment to determine if Ringling is constitutionally entitled to a jury trial.

The mandated Seventh Amendment inquiry was recently described by the Supreme Court in *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). In essence, the inquiry focuses on whether legal or equitable rights are at stake. To determine which are at stake, courts must examine (1) the nature of the issues involved, and (2) the remedy sought. *Id.* More particularly:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.

*Tull v. United States,* 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987). Of the two inquiries, the second, the nature of the remedy, is more important. *Terry,* 494 U.S. at 565,[10] 110 S.Ct. at 1344–45.

---

mean "either 'judge' singularly or 'judge and jury' in tandem." *Id.* Thus, the *Gnossos Music* panel concluded that the Copyright Act was unclear with respect to the right to a jury trial. While this conclusion fits the Copyright Act, it hardly fits the anti-dilution provision. Thus, the Copyright Act provision construed in *Gnossos Music* contains only a single reference to "the court", which understandably was found to be "not sufficiently clear to mandate either a bench trial or a jury trial." *Id.* at 119. By contrast, the Act's anti-dilution provision contains several references solely to "the court", to the court's "discretion" and to the "principles of equity." Accordingly, the panel's construction of "the court" in *Gnossos Music* does not compel the conclusion that Congress intended "the court" in the Act to refer to judge and jury collectively.

8. To be sure, this conclusion depends upon a *modest inferential step that would be entirely unnecessary had Congress simply said what it meant.* And it is hard to see why Congress did not speak more plainly in this instance, since in creating a new cause of action for dilution, the issue whether to commit the matter to a jury must have been prominent in the minds of those who drafted the provision. In any event, courts spend altogether too much time trying to fathom Congress' intent from a statute's terms when the intent might easily have been plainly stated. In the dialogue between court and legislature,

which is central to our legal system, the legislature has a duty to speak with reasonable precision lest the dialogue becomes cacophonous and the law making power that properly belongs to the legislators passes to the judges.

9. Thus, the *Gnossos Music* panel turned to the Seventh Amendment inquiry to resolve whether a jury was constitutionally required once it found the Copyright Act ambiguous on the issue. 653 F.2d at 119. If the Seventh Amendment does not require a jury trial for claims created by a statute that is ambiguous on that issue, a court would presumably have to return to traditional statutory interpretation to determine whether a jury was intended by Congress. In other words, the ambiguity would have to be resolved. That question was not reached in *Gnossos Music* because the panel found that a jury trial was constitutionally required notwithstanding the language of the statute.

10. Ringling contends that the Seventh Amendment inquiry is a disjunctive test. Thus, in Ringling's view, a jury trial is required if either legal rights are adjudicated or legal remedies are implemented. *See, e.g., In re Lockwood,* 50 F.3d 966, 972 (Fed.Cir.1995), *vacated sub nom, American Airlines, Inc. v. Lockwood,* —— U.S. ——, 116 S.Ct. 29, 132 L.Ed.2d 911 (1995). Yet, *Terry* makes clear that the sole inquiry is whether legal

These principles, applied here, compel the conclusion that the Seventh Amendment does not entitle Ringling to a jury trial on its dilution claim.

## A.

The first inquiry focuses on the nature of the issues to be adjudicated. Infringement actions bear similarities to actions in tort for interference with a property right. *See, e.g., Gnossos,* 653 F.2d at 120. Thus, courts considering infringement claims in other contexts have found that these claims encompass primarily legal issues.[11] Similarly, the new federal anti-dilution provision, while recognizing a new manner in which infringement can occur, reflects an injury to a trademark owner's property right in that trademark. Accordingly, an anti-dilution claim has some elements of a classic legal action in tort.

On the other hand, other elements of a trademark dilution claim encompass equitable issues.[12] For example, an actionable anti-dilution claim is, by the terms of the statute, subject to the "principles of equity." 15 U.S.C. § 1125(c)(1). Moreover, the inquiry defined by the anti-dilution provision requires the consideration and balancing of factors that are articulated, in part, in the statute. 15 U.S.C. § 1125(c)(1). In a classic trademark infringement action, the determination of whether there is a likelihood of confusion between the marks at issue requires a similar balancing test.[13] And, although the existence of relevant factors is a question of fact, the balancing of these factors to determine likelihood of confusion is a matter of law. *Plus Products v. Plus Discount Foods, Inc.,* 722 F.2d 999, 1005 (2nd Cir.1983). Similarly, the balancing test required in the dilution inquiry is likely a matter of law for the court. Thus, although the anti-dilution claim bears some resemblance to a property tort, the claim itself invokes the principles of equity and rests upon a court's balancing of enumerated factors, a traditional characteristic of an equitable cause of action.

In the final analysis, a claim brought under the Act's anti-dilution provision has both legal and equitable characteristics thereby leaving this part of the Seventh Amendment inquiry in equipoise. In this circumstance, the Seventh Amendment search "for a single historical analog" must focus chiefly on the nature of the remedy, the more important half of the Seventh Amendment equation.

rights are adjudicated. And in this inquiry, both the nature of the claims asserted and the remedies requested must be examined. *Terry,* 494 U.S. at 565, 110 S.Ct. at 1344–45; *see also Woodell v. Intern. Broth. of Elec. Workers,* 502 U.S. 93, 97, 112 S.Ct. 494, 497–98, 116 L.Ed.2d 419 (1991) (reaffirming the *Terry* analysis). Ringling's contention that the nature of the claim, by itself, mandates a jury trial is contrary to *Terry's* clear emphasis on the nature of the remedy. 494 U.S. at 565, 110 S.Ct. at 1344–45. As the Supreme Court has stated, "[o]ur search is for a single historical analog, taking into consideration the nature of the cause of action and the remedy as two important factors." *Tull,* 481 U.S. at 421 n. 6, 107 S.Ct. at 1837 n. 6.

**11.** *See, e.g., Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477, 82 S.Ct. 894, 899–900, 8 L.Ed.2d 44 (1962) (trademark infringement claim held to be legal); *Lockwood,* 50 F.3d at 976 (patent infringement claim could be raised in law or equity); *Gnossos,* 653 F.2d at 120 (copyright infringement analogous to tort actions traditionally recognized as legal). *But cf. Twentieth Century Music Corp. v. Frith,* 645 F.2d 6, 7 (5th Cir.1981) (denying jury trial for copyright claim where statutory damages are characterized as equitable).

**12.** This conclusion is not foreclosed by *Dairy Queen* or *Gnossos Music,* wherein trademark and Copyright claims were held to adjudicate legal rights. In *Dairy Queen,* the Supreme Court observed that the claim presented "[is] for a money judgment [and hence] is a claim wholly legal in its nature." *Id.* at 477, 82 S.Ct. at 899. Thus, the Supreme Court held that "an action for damages based on a charge of trademark infringement" is a legal claim. *Id.* Similarly, in *Gnossos Music,* the Fourth Circuit observed that defendant's infringing activity was "a tortious interference with a property right for which Congress created damages", 653 F.2d at 120, and held that the relevant damages were "a remedy of a type which traditionally would have been enforced at law." *Id.* Thus, *Dairy Queen* and *Gnossos Music* clearly turn on the nature of the remedy available for the claims presented and neither is conclusive support for the contention that trademark dilution claims are legal in nature.

**13.** *See, e.g., Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2nd Cir.1961), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961) (likelihood of confusion inquiry considers strength of mark, degree of similarity, proximity of products, actual confusion, quality of defendant's product, and other factors).

*See, e.g., Terry,* 494 U.S. at 565, 110 S.Ct. at 1344–45.

### B.

The remedies for a dilution claim are limited by the Act to injunctive relief, except where a defendant "willfully intended to trade on the owner's reputation or to cause dilution of the famous mark." 15 U.S.C. § 1125(c)(2). Thus, a trademark owner showing dilution, but not willful intention to dilute, will have only the right to an injunction, an entirely equitable remedy.[14] And where only an injunction is available to remedy dilution, the Seventh Amendment does not compel a jury trial. *See* 9 Wright & Miller, *supra,* at § 2308 ("[T]here is no constitutional right to a jury trial on a claim for an injunction.")

This conclusion is sufficient to resolve the instant matter because Ringling is limited to an injunction for its dilution claim. This is so because Utah is entitled to summary judgment on the issue of "willful intent". Alternatively, even if "willful intent" is shown, the Seventh Amendment does not compel a jury trial for Ringling's dilution claim because there is no evidence of damages and the remaining available remedies in §§ 1117(a) and 1118 are wholly equitable.

### 1. *Summary Judgment on "Willful Intent"*

■ The principles governing summary judgment are well settled. Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. This standard is met where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct.

2548, 2552–53, 91 L.Ed.2d 265 (1986). A "mere scintilla" of evidence is not enough. To the contrary, when viewed in the light most favorable to the non-moving party, the evidence must be sufficient for a reasonable trier of fact to find in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Thus, summary judgment on the question of "willful intent" is required if the evidence, viewed in the light most favorable to Ringling, would not allow a reasonable trier of fact to find that Utah "willfully intended to trade on the owner's reputation or to cause dilution of the famous mark." 15 U.S.C. § 1125(c)(2).

"Willful", the Supreme Court has observed, is synonymous with "voluntary," "deliberate," and "intentional". *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988) (construing language in the Fair Labor Standards Act). Thus, "willful intent", while somewhat redundant, requires a plaintiff seeking non-injunctive remedies to demonstrate that a defendant deliberately adopted a mark with the intent either (i) to trade on the owner's reputation,[15] or (ii) to dilute the famous mark. 15 U.S.C. § 1125(c)(2).

These principles, applied here, compel summary judgment for Utah on the question of willful intent to dilute. To demonstrate "willful intent", Ringling relies on (i) Utah's presumed knowledge of Ringling's famous mark before its adoption of THE GREATEST SNOW ON EARTH, and (ii) Utah's alleged efforts to expand its mark notwithstanding its longstanding knowledge of Ringling's trademark. This evidence falls far short of demonstrating "willful intent". Utah's adoption and use of its mark notwithstanding its knowledge of Ringling's famous mark cannot, without more, demonstrate "willful intent". Such actions are as consistent with a belief that Utah's mark does not

---

**14.** *See* 9 Wright & Miller, *supra,* at § 2308 ("Actions for injunctions are equitable in nature and were unknown to the common law courts.").

**15.** To "trade on an owner's reputation" is similar to the "predatory intent" that often factors into the analysis of dilution under state anti-

dilution statutes. *See, e.g., Mead Data Cent., Inc. v. Toyota Motor Sales,* 875 F.2d 1026, 1037 (2nd Cir.1989) (Sweet, J. concurring) (predatory intent "requires a showing that the junior mark adopted its mark hoping to benefit commercially from association with the senior mark").

dilute as they are with an allegation of "willful intent." In other words, while knowledge of a famous mark is necessary to demonstrate that a subsequent mark was adopted deliberately to dilute or trade upon the owner's reputation, that knowledge, by itself, is not sufficient to demonstrate that a defendant "willfully intended" to violate the protection granted by the Act. Utah clearly believes that its mark is not diluting, and has not exploited any similarity of its mark with that of Ringling through the presentation of THE GREATEST SNOW ON EARTH with circus style lettering or circus themes. Moreover, the record reflects that Utah had a good faith, reasonable belief that its use of THE GREATEST SNOW ON EARTH was entirely lawful.[16]

In a further effort to find evidence of "willful intent", Ringling points to a Utah Fall/Winter 1995–96 press release. By Ringling's lights, this press release reflects Utah's intent to trade upon Ringling's reputation because it states, in part, "Utah Stars As Main Act in the Greatest Snow of Earth" and "Get your tickets to the Greatest Snow on Earth now!" Ringling's reliance on this press release is of no avail.

■ To begin with, this press release was issued before the January 16, 1996 effective date of the anti-dilution provision, and "willful intent" before this effective date cannot provide the basis for an enhancement of Utah's potential liability for dilution. *See Landgraf v. USI Film Products*, 511 U.S.

244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).[17] In other words, under *Landgraf*, "willful intent" before January 16, 1996 is not actionable. Thus, the press release is only relevant to the extent that it might create an inference of Utah's intent before January 16, 1996 that, in turn, might create a further inference of Utah's "willful intent" after that date. These weak, multiple inferences do not create a basis upon which a reasonable trier of fact could find "willful intent". *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) ("[A party] cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.")

Moreover, any inference created by the press release is conclusively rebutted by Utah's uncontradicted explanation of the press release as a reference to the theater, not a circus.[18] Given this and the weakness of the inference, the press release is, at best, a bare scintilla of "willful intent" and does not provide the basis upon which a reasonable trier of fact could find that Utah "willfully intended" to trade on Ringling's reputation or to dilute Ringling's famous mark. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. To hold otherwise would improperly allow a jury to speculate. Thus, Utah is entitled to summary judgment on the question of its willful intent and Ringling is limited to an injunction for its dilution claim. It follows that the Seventh Amendment does

16. This conclusion is supported by (i) Utah's registration of its mark in Utah, (ii) the opinion Utah received from the Utah Attorney General that the use of its mark was appropriate, and (iii) the defeat of Ringling's opposition to Utah's right to federal registration of the mark in 1995.

17. In *Landgraf*, the Supreme Court held that a statute will not be applied to have retroactive effect absent clear congressional intent to the contrary. 511 U.S. at 280–81, 114 S.Ct. at 1505. Specifically, the "retroactive effect" prohibited is present where a statute:

   would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.

*Id.* The anti-dilution provision does not reflect clear Congressional intent with respect to retroactivity. *See Circuit City Stores, Inc. v. OfficeMax, Inc.*, 949 F.Supp. 409, 414–15 (E.D.Va.

1996). Thus, under *Landgraf*, Utah's liability for past, completed conduct cannot be increased by the subsequent enactment of the anti-dilution provision. Accordingly, *Landgraf* bars relief, including damages, based solely on conduct completed before the enactment of the anti-dilution provision.

18. The press release reports comments made by a Washington, D.C. meteorologist who described "the drama of American skiing." Pursuing this analogy, the meteorologist described the Cascades and Sierra Nevadas as a "prologue", Colorado and New Mexico as the "epilogue", and Utah as "the main, show-stealing act". It is in this context, not in the context of a circus, that the release refers to Utah as a "star" and to buying "tickets". Thus, Ringling's reliance on this press release to show Utah's deliberate effort to trade upon Ringling's reputation is conclusively rebutted.

not entitle Ringling to a jury trial on this claim.[19]

### 2. *Even Assuming Willfulness, Only Equitable Remedies Are Available*

 In the alternative, even if "willful intent" is demonstrated, the Seventh Amendment does not entitle Ringling to a jury trial on its dilution claim because no legal remedies are available on the facts of this case.

Where "willful intent" is demonstrated, a trademark owner is not limited to injunctive relief, but may be entitled, subject to "equitable principles", to further remedies, namely (i) disgorgement of defendant's profits, (ii) money damages, (iii) costs, and (iv) the issuance of an order requiring production and destruction of any materials in the possession of defendant that bear the diluting mark. Two of these remedies—the disgorgement of defendant's profits and the order requiring production of defendant's materials bearing the diluting mark—are wholly equitable[20] and do not create a constitutional jury trial right. Likewise, the availability of a costs remedy, by itself, provides no basis for a constitutionally mandated jury right. Costs are merely incidental to and intertwined with other available remedies. Thus, where the other available remedies are wholly equitable, costs are also an equitable remedy. *See Terry,* 494 U.S. at 570–71, 110 S.Ct. at 1347–48.

Only the availability of money damages may possibly trigger the Seventh Amendment mandate for a jury trial. But it is unnecessary to reach this question because there is no evidence of money damages in this case. The Act defines dilution as the lessening of the "capacity of a famous mark to identify and distinguish goods or services." Ringling contends that damages from such dilution include (i) a reduction in the sales of the owner of the mark related to its primary business activity, *i.e.,* circus ticket sales, or (ii) a reduction in the value of the mark for licensing and co-promotion with third parties. The record contains no evidence of a reduction in the selling power of the trademark under either theory. Indeed, at oral argument Ringling conceded that the value of its mark for licensing had not diminished and that it had no evidence of damages. Given this, there can be no Seventh Amendment claim for a jury trial based on the money damages remedy.

In sum, the Act's language makes clear Congress' intent to commit dilution claims to the court without a jury. And the Seventh Amendment does not require otherwise where, as here, only equitable remedies are available. Accordingly, Utah's motion to strike Ringling's jury demand must be granted.

An appropriate Order has issued.

---

19. *See supra,* note 14 and accompanying text.

20. An order issued by a court authorizing destruction of materials in a defendant's possession is clearly not a traditional remedy enforced at law. And an action for disgorgement of improper profits, while involving a monetary award, is "traditionally considered an equitable remedy." *Tull,* 481 U.S. at 424, 107 S.Ct. at 1839; *see also Terry,* 494 U.S. at 570–71, 110 S.Ct. at 1347–48 (action for improper profits is "restitutionary" and, thus, characterized as equitable).