EMMPRESA CUBANA DEL TABACO,
d.b.a. Cubatabaco, Plaintiff,

v.

CULBRO CORPORATION and
GENERAL CIGAR CO.,
INC., Defendants.

No. 97 CIV. 8399 RWS.

United States District Court,
S.D. New York.

Dec. 15, 2000.

Ribinowitz, Boudin, Standard, Krinsky & Lieberman by Michael Krinsky, David B. Goldstein, Christine S. Kim, New York City, for Plaintiff.

Morgan & Finnegan by Harry C. Marcus, Janet Dore, New York City, for Defendants.

## OPINION

SWEET, District Judge.

Plaintiff Empresa Cubana del Tabaco d.b.a Cubatabaco ("Cubatabaco") has moved under Federal Rules of Civil Procedure 7 and 38 to strike the jury demand of defendants Culbro Corporation, and General Cigar Co., Inc. (collectively, "General Cigar"). For the reasons set forth below, the motion is granted.

This motion requires once again peering through the mists of time, aided by precedent, to define the line between equity and law in a controversy over trademark, in this instance the "COHIBA" mark as applied to cigars. The dispute may foreshadow an effort by Cubatabaco to return the Cuban Cohiba to the market in the United States. Since Cubatabaco is an instrumentality of the government of Cuba, the right to a jury trial is both procedurally challenging and tactically significant.

*Prior Proceedings*

Cubatabaco filed its complaint on November 12, 1997, alleging that Cubatabaco possessed a COHIBA mark for its cigars which was "well-known" in the United States at the relevant times, and that General Cigar's efforts to exploit and trade upon Cubatabaco's COHIBA mark in order to generate profits on the sale of its own cigars entitle Cubatabaco to relief under the Paris Convention for the Protection of Intellectual Property (the "Paris Convention") Arts. 6bis [1] and 10bis (unfair competition); the Inter–American Convention, Arts. 7 (use of mark in United States by someone who knows of its prior existence and continuous use in another treaty country), 20 (unfair competition) and 21 (unfair competition); section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(c)(1) (trademark dilution) and 1125(a) (willful trademark and trade dress infringement); and New York State law (trademark dilution, willful infringement, unfair competition).

In addition to an injunction against future use by General Cigar of the COHIBA mark, Cubatabaco seeks an order directing the United States Patent and Trademark Office to cancel General Cigar's United States trademark registration Nos. 1,147,-309, issued in 1981, and 1,898,273, issued in 1995, as well as an order requiring General Cigar to disgorge its profits on a theory of unjust enrichment through its exploitation of the fame and reputation of Cubatabaco's COHIBA brand in the promotion and sale of its own cigars in the United States.

General Cigar filed its answer and jury demand, and the instant motion to strike the demand was heard and marked fully

1. Article 6bis provides in pertinent part:
   [C]ountries of the Union undertake, ... at the request of an interested party ... to refuse or to cancel the registration, and to prohibit the use of a trademark which constitutes a reproduction, an imitation, or a translation, liable to create confusion, of a mark considered by the competent authority of the country of registration or use to be well known in that country as being already the mark of a person entitled to the benefits of this Convention and used for identical or similar goods.

submitted on September 6, 2000.[2]

### Facts

The parties have set forth by memoranda certain of the relevant facts which are set forth below as background, not as findings.

Cubatabaco is a Cuban state enterprise and is the owner of a COHIBA trademark registration for cigars in Cuba and the rest of the world except for the United States. It obtained the Cuban registration in 1972 and, beginning in the early 1970's, subsequently registered the COHIBA mark in over 115 countries. Directly and through its licensee, Habanos, S.A., Cubatabaco exports Cuban COHIBA cigars throughout the world, excluding the United States as a result of the United States trade embargo. Cubatabaco, through its licensee, also sells COHIBA cigars to the numerous foreign visitors to Cuba, including United States nationals.

Culbro Corporation merged into and was survived by General Cigar Holdings, Inc., of which General Cigar Co., Inc. is presumably an operating subsidiary.

General Cigar first obtained United States trademark registration for the COHIBA mark, Registration No. 1,147,309, on February 17, 1981. *Cigar Aficionado* magazine in Autumn 1992 featured the Cuban COHIBA in a cover story about "Cuba's Best Cigar," entitled "The legend of Cohiba: Cigar Lovers Everywhere Dream of Cuba's Finest Cigar." General Cigar applied for a second registration for a plain block letter form of the COHIBA mark in 1992, obtaining Registration No. 1,898,273.

In September 1997, General Cigar expanded its sales of cigars made in the Dominican Republic under the COHIBA name. In January 1997, Cubatabaco initiated cancellation proceedings in the Trademark Trial and Appeals Board.

### Discussion

### I. The Demand For A Jury Trial Is Stricken

### A. The Right To A Jury Trial In Actions At Law

Rule 38(a) of the Federal Rules of Civil Procedure states that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." Fed.R.Civ.P. 38(a). The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII.

In construing the foregoing provision of the Seventh Amendment, the Supreme Court has observed:

> The right to a jury trial includes more than the common-law forms of action recognized in 1791; the phrase "Suits at common law" refers to "suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered" .... The right extends to causes of action created by Congress ... Since the merger of the systems of law and equity, ... this Court has carefully preserved the right to trial by jury where legal rights are at stake.... " 'Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care....' "

To determine whether a particular action will resolve legal rights, we examine both the nature of the issues involved and the remedy sought. "First, we compare the statutory action to 18th-century actions brought in the courts of England

---

**2.** Both parties submitted letters supplementing their arguments shortly after September 6, 2000. Those letters were also considered by the Court.

prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature...."

The second inquiry is the more important in our analysis.

*Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564–5, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (citations omitted) (emphasis in original).

Consistent with the Supreme Court's warning that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care, the Second Circuit has held that " 'the federal policy favoring jury decisions of disputed fact questions' ... impels us to resolve any doubts in favor of the right to a jury trial." *Lee Pharmaceuticals v. Mishler,* 526 F.2d 1115, 1117 (2d Cir.1975) (citations omitted).

**B. *General Cigar Is Not Entitled To A Jury Trial As To Cubatabaco's Claim For Disgorgement Of Profits On An Unjust Enrichment Theory***

■ The crux of the issue presented here is whether or not a claim for disgorgement of profits in a trademark case constitutes a claim for damages entitling the defendant to a jury trial. Fortunately our Circuit has resolved this issue.

In *George Basch Co., Inc. v. Blue Coral, Inc.,* 968 F.2d 1532, 1538 (2d Cir.1992), the Second Circuit explained that in equity a court has the power to grant complete relief by awarding profits for unjust enrichment in trademark infringement suits:

> The infringer is required in equity to account for and yield up his gains to the true owner [of the mark], upon a principle analogous to that which charges a trustee with the profits acquired by the wrongful use of the property of the cestui que trust. Not that equity assumes jurisdiction upon the ground that a trust exists.... [T]he jurisdiction must be rested upon some other equitable ground—in ordinary cases, as in the present, the right to an injunction—but

the court of equity, having acquired jurisdiction upon such ground, retains it for the purpose of administering complete relief, rather than send the injured party to a court of law for his damages. And profits are then allowed as an equitable measure of compensation, on the theory of a trust ex maleficio.

*Id.* at 1538 (*quoting Hamilton–Brown Shoe Co. v. Wolf Brothers & Co.,* 240 U.S. 251, 259, 36 S.Ct. 269, 60 L.Ed. 629 (1916)).

Other courts have seen the issue the same way. *See Modefine v. Burlington Coat Factory Warehouse Corp.,* 888 F.Supp. 44, 45–46 (S.D.N.Y.1995) (applying *Basch* in holding in infringement action that plaintiff's claim for defendant's profits on a theory of unjust enrichment triable without jury); *Merriam–Webster, Inc. v. Random House,* No. 91 Civ. 1221, 1993 WL 205043, at *2 (S.D.N.Y. June 10, 1993) (applying *Basch* in holding there was no right to jury trial in trademark infringement action where plaintiff seeking profits solely on unjust enrichment theory), *rev'd on other grounds,* 35 F.3d 65 (2d Cir.1994); *see also Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.,* 955 F.Supp. 598, 605 (E.D.Va. 1997) ("[T]he disgorgement of defendant's profits [under 15 U.S.C. § 1117(a)] [is] wholly equitable and do[es] not create a constitutional jury trial right.").

The issue becomes clouded when a claim for an accounting is substituted for a damage claim, as in *Alcan Int'l Ltd. v. The S.A. Day Manufacturing Co., Inc.,* 179 F.R.D. 398, 402 (W.D.N.Y.1998) ("[I]t is clear that S.A. Day seeks profits as a rough proxy measure of its damages, given the difficulty of establishing damages due to product disparagement."); *The Daisy Group, Ltd. v. Newport News, Inc.,* 999 F.Supp. 548, 552 (S.D.N.Y.1998) (distinguishing between profits remedy as rough proxy for damages and profits remedy for unjust enrichment— a traditionally equitable theory of recovery [ ] triable without a jury—and concluding that right to jury

trial was preserved because plaintiff sought profits as a rough proxy measure of its damages) (*citations omitted; cf. Ideal World Mktg., Inc. v. Duracell, Inc.*, 997 F.Supp. 334, 338 (E.D.N.Y.1998)) (claim for profits is surrogate for damages irrespective of underlying rationale).

Cubatabaco has never been able to sell its cigars in the United States due to the United States embargo on Cuban products. Thus, Cubatabaco does not—and could not—argue that it is entitled to damages as a result of General Cigar's allegedly wrongful conduct. Yet the law still entitles Cubatabaco to General Cigar's wrongful profits on a theory that they were wrongfully obtained by exploitation of Cubatabaco's COHIBA mark. "In substance, [Cubatabaco] seeks a determination whether [General Cigar] was enriched because of an infringement and, if so, an order requiring restitution of such money from [General Cigar] to [Cubatabaco]. These demands are equitable in nature." *American Cyanamid Co. v. Sterling Drug*, 649 F.Supp. 784, 789 (D.N.J.1986).

The Second Circuit in *Basch* discussed the three distinct bases for an award of profits, namely "if the defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if the accounting is necessary to deter a willful infringer from doing so again." 968 F.2d at 1537 (internal quotation marks and citation omitted). Cubatabaco's request for profits proceeds solely on a theory of unjust enrichment.

Cubatabaco has relied on *Basch* for its position that the relief sought—an accounting for unjust enrichment profits—is equitable in nature. *See* 968 F.2d at 1537. General Cigar has cited *Basch* as authority that proof of lost sales is required to establish entitlement to unjust enrichment profits and, therefore, that a claim for such profits is necessarily legal rather than equitable because lost sales represent actual damages to a trademark infringement plaintiff. *See id.* at 1538.

However, the Second Circuit has explicitly held that proof of "lost sales" is irrelevant in cases in which the parties do not directly compete. *See Monsanto Chemical Co. v. Perfect Fit Prods. Mfg. Co.*, 349 F.2d 389, 395–96 (2d Cir.1965). *Monsanto* addressed whether an accounting of profits should be allowed in a case of trademark infringement in which the parties were not direct competitors and thus there was no proof of injury to the plaintiff in the form of diverted or "lost" sales resulting from the infringement. 349 F.2d at 392. The court rejected the view that an accounting for unjust enrichment profits is not available in these circumstances, observing that permitting recovery of unjust enrichment profits furthers the purpose of the Lanham Act:

> In enacting the Lanham Act, Congress observed that any trademark statute has a two-fold purpose. One is to protect the public.... Secondly, where the owner of a trademark has spent energy, time, and money in presenting to the public the product, he is protected in his investment from its misappropriation by pirates and cheats.

*Id.* at 395 (*citing* S.Rep. No. 1333, 79th Cong., 2d Sess. 1–2 (1946), in U.S.Code Cong. Serv. 1274 (1946)). The court then reiterated its holding that there is no requirement of proof of lost sales to obtain an accounting of profits when the parties do not directly compete:

> We think it doubtful whether even the second of these purposes, protection of the trademark owner, is adequately served by a rule which would allow accountings only where the parties directly compete.

*Id.* The court emphasized that:

> this rationale accords better with the language of § 35 is evident, and it is further supported by comparison of § 35 with the less generous language of its predecessor, § 19 of the Trade–Mark Act of 1905, 33 Stat. 729. We also think

that it is more suited to the general purposes of the Lanham Act.

*Id.*

General Cigar has cited on *Ideal World,* 997 F.Supp. 334, for its claim that a trademark-based accounting claim based on a theory of unjust enrichment gives rise to a right to a jury trial. However, *Ideal World* relies on the *Basch* court's point that unjust enrichment profits between direct competitors require proof of lost sales, which *Ideal World* then equates with a damage award. *See Ideal World,* 997 F.Supp. at 337–38. This point is simply inapposite here, where the parties do not directly compete. Second, to the extent *Ideal World* suggests that an accounting of unjust enrichment profits mandates a jury trial, it is in conflict with the plain language of *Basch* and ignores the Court of Appeals' careful categorical distinctions between "unjust enrichment" profits, on the one hand, and profits "as a rough proxy measure of plaintiff's damages," on the other. *Basch,* 968 F.2d at 1537–39; *see Ideal World,* 997 F.Supp. at 338.

General Cigar also cites *Daisy Group v. Newport News,* 999 F.Supp. 548 (S.D.N.Y. 1998), and *Gucci America, Inc. v. Accents,* 994 F.Supp. 538 (S.D.N.Y.1998), as cases "upholding the right to a jury in trademark actions where the plaintiff seeks an accounting of profits." However, *Daisy Group,* relying on *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), simply reiterated the basic principle that a party cannot plead its way out of a jury trial when there is "an adequate remedy at law." 999 F.Supp. at 551, and then concluded that the plaintiff in that case sought "profits as a surrogate for damages, an alternative measure of damages because of the difficulty of proving actual lost sales." *Id.* at 552 (internal quotation marks and citation omitted).

In *Gucci,* plaintiffs sought actual damages, treble damages, and profits for "willful deceptiveness . . . in addition to plaintiffs' actual damages." 994 F.Supp. at 540.

The parties agreed that the determination of actual damages would be tried to the jury. *Id.* The court found that the requests for profits and trebling of damages were also jury issues because they "largely serve retributive and deterrent purposes." *Id.* "deterrence" is one of the three theories for an award of profits for trademark infringement that the Second Circuit identified in *Basch,* 968 F.2d at 1537–39 and distinguished from an "unjust enrichment" theory. In *Gucci,* because a jury would already be empaneled on damages, the court "in the exercise of its discretion [left] the assessment of the amount of such [deterrence] profits to the same jury." 994 F.Supp. at 541. Thus, neither *Daisy Group,* 999 F.Supp. 548, nor *Gucci,* 994 F.Supp. 538, warrant the conclusion that General Cigar is entitled to a jury trial here.

### C. *Dairy Queen Does Not Require A Different Result As To Cubatabaco's Claim For Disgorgement Of Profits*

General Cigar relies upon the Supreme Court's decision in *Dairy Queen,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44, as its principal authority for its jury demand. *Dairy Queen* concerned a trademark licensing contract. *Id.* at 473, 82 S.Ct. 894. Dairy Queen, the licensor, alleged that the licensee breached the contract by failing to pay it some $60,000 dollars and requested an injunction to prevent the licensee from dealing in the Dairy Queen franchise, an accounting to determine the exact amount of damages owed under the contract, and a judgment of money damages for that amount. *Id.* at 475, 82 S.Ct. 894. The Supreme Court decided that a right to jury trial does exist as to issues inherent in the contract claim for damages, regardless of how the plaintiff chooses to characterize the claim, stating:

> [W]e think it plain that [the plaintiff's] claim for a money judgment is a claim wholly legal in its nature however the complaint is construed. As an action on

a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character. And as an action for damages based upon a charge of trademark infringement, it would be no less subject to cognizance by a court of law.

*Id.* at 477, 82 S.Ct. 894.

Cubatabaco's complaint does not present a legal claim akin to that in *Dairy Queen.* There is no contractual relationship between Cubatabaco and General Cigar, and Cubatabaco's claim is not for damages for breach of contract. "Rather, Plaintiff's claim is for injunctive relief and an equitable accounting, both historically suits in equity." *Coca–Cola Co. v. Cahill,* 330 F.Supp. 354, 355 (W.D.Okla.1971); *see Kimberly–Clark v. Kleenize Chemical Corp.,* 194 F.Supp. 876, 878 (N.D.Ga.1961) ("Action[s] for injunctions are equitable in nature, unknown to the common law.") (citations omitted); 9 Charles Alan Wright and Arthur R. Miller, *Federal Practice & Procedure 2d* § 2310, at 90 (2d ed. 1995) ("*Dairy Queen* does not change the former principle that equity could act, and thus that a jury is not a matter of right, if the duty to account itself is of equitable origin."). Therefore, *Dairy Queen* does not require the denial of Cubatabaco's motion.

### D. *Cancellation of General Cigar's COHIBA Registration Is An Equitable Remedy*

■ A claim for cancellation of a trademark registration pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, is equitable in nature and does not give rise to a jury trial right. For example, in *Neva, Inc. v. Christian Duplications Intern., Inc.,* 743 F.Supp. 1533, 1549 (M.D.Fla.1990), a case where the request for cancellation was granted in conjunction with a jury trial, the case was first tried to a jury on a section 43(a) claim seeking damages and then the court ordered cancellation. *See also Gear, Inc. v. L.A. Gear California, Inc.,* 670 F.Supp. 508, 512 (S.D.N.Y.1987) ("Section 37 of the Lanham

Act empowers the court to order the cancellation of registrations in any civil action in which the validity of the mark is placed in issue."). Moreover, section 37 does not in and of itself provide jurisdiction; nor is it a distinct cause of action. *Universal Sewing Machine Co., Inc. v. Standard Sewing Equipment Corp.,* 185 F.Supp. 257, 259 (S.D.N.Y.1960) ("[A]bsent some other basis for jurisdiction, a suit for cancellation by one in plaintiff's position may not be independently maintained in this court.").

A cancellation order is similar to other equitable orders issued by a court that require recall of infringing materials, which have been held to be wholly equitable in nature. *See Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.,* 646 F.2d 800, 805–06 (2d Cir.1981); *Ringling Bros.,* 955 F.Supp. at 605, *aff'd,* 170 F.3d 449 (4th Cir.1999); J. Thomas McCarthy, 5 *Trademarks and Unfair Competition* § 30:8 (4th ed.1997).

### E. *Cubatabaco's Federal Trademark Dilution Claim Does Not Give Rise To A Right To A Jury*

■ Absent proof of willful intent on the part of a defendant to trade upon and to dilute a plaintiff's trademark, a trademark dilution plaintiff limited to injunctive relief as a remedy for its federal trademark dilution claim. 15 U.S.C. § 1125(c)(1) ("[T]he owner of the famous mark shall be entitled only to injunctive relief ... unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark."); *see* 15 U.S.C. § 1125(c)(1) (injunctive relief is "subject to the principles of equity and ... such terms as the court deems reasonable"); *Ringling Bros.,* 955 F.Supp. at 599–600 (discussing 15 U.S.C. §§ 1125(c)(1) and (2)). As the court in *Ringling Bros.* observed:

> [T]he Act's pertinent language makes clear the essentially equitable nature of the dilution claim and therefore reflects Congressional intent to commit the dilution cause of action to a court without a

jury.... In the absence of willful intention to dilute, therefore, the Act's limitation to traditional equitable relief plainly means that Congress, conscious of centuries of settled jurisprudence excluding juries in purely equitable matters, intended to commit a dilution claim to a court without a jury.

955 F.Supp. at 599–600 (citations omitted); *see* 9 Wright & Miller, *Federal Practice & Procedure* § 2308 (Supp.2000). Nor does the Seventh Amendment require a trial by jury on such a claim where the only remedy available is injunctive in nature. "[W]here only an injunction is available to remedy dilution, the Seventh Amendment does not compel a jury trial." *Id.* at 603 (citation omitted); *see* 9 Wright & Miller, *Federal Practice & Procedure* § 2308 (Supp.2000). Therefore, to the extent that Cubatacabo is limited to injunctive relief on its federal dilution claim, the claim is equitable in nature and does not give rise to a jury trial right.

Where willful intent is shown, a trademark dilution plaintiff:

shall [in addition to injunctive relief] also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity.

15 U.S.C. § 1125(c)(2). However, even if Cubatabaco were able to establish willful intent on the part of General Cigar, and therefore could obtain other forms of relief besides an injunction, in this case the only additional relief sought by and available to Cubatabaco is equitable in nature. Under § 1117(a), a trademark dilution plaintiff may seek disgorgement of the defendant's profits, money damages, and costs. Under § 1118, the plaintiff may seek a destruction order. A claim for money damages would trigger the right to a jury trial. *Ringling Bros.*, 955 F.Supp. at 605. However, where there is no evidence of damages, the plaintiff is limited to the other forms of relief under §§ 1117 and 1118, all of which are equitable. *Ringling Bros.*, 955 F.Supp. at 603.[3]

### F. The New York Anti–Dilution Claim Does Not Provide A Right To A Jury

■ Cubatabaco's New York State dilution claim, brought pursuant to General Business Law § 360–1, is exclusively equitable in nature. Section 360–1 provides that "dilution of the distinctive quality of a mark or trade name shall be ground for injunctive relief." N.Y. Gen. Bus. § 360–1 (McKinney Supp.2000). There is no right to damages under section 360–1. *See W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.*, 808 F.Supp. 1013, 1026 n. 2 (S.D.N.Y.1992) (noting that New York anti-dilution statute "provides for only equitable relief"), *aff'd*, 984 F.2d 567 (2d Cir. 1993).[4] Therefore, there is no right to trial by jury on this claim. *Id.* at 1015–16, 1026–27 (deciding state dilution claim after dismissing jury).

### G. The New York Misappropriation Claim Does Not Provide A Right To A Jury

■ Cubatabaco's misappropriation claim is a species of unfair competition recognized under New York case law. *See, e.g., Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774, 782 (2d Cir.1964) ("Particularly where the defendant's conduct has involved a clear attempt to profit at the expense of the plaintiff, ... New York courts have deemed the conduct to be unfair competition.") (citations omitted). It is beyond dispute that such a claim is "essentially equitable in nature." *Protexol v. Koppers*, 12 F.R.D. 7, 8 (S.D.N.Y.1951)

---

3. The Fourth Circuit affirmed the district court holding without addressing this point. *See Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d 449, 465 (4th Cir.1999).

4. W.W.W. Pharmaceutical concerned former General Business Law § 368–d, which was later replaced by current section 360–1. *See* N.Y. Bus. Law. § 360–1 (McKinney Supp. 2000).

(holding that state unfair competition claim did not give rise to jury trial right). Thus, unless a plaintiff expressly seeks specified damages, "[c]laims such as those here set forth are not triable by jury at common law and do not come within the purview of either the Seventh Amendment ... or Rule 38(a)." *Id.; see also Robine v. Ryan,* 310 F.2d 797, 798 (2d Cir.1962) (misappropriation under New York law in breach of confidential business relation claim states a legal cause of action "when the relief requested is damages in a specified sum," entitling plaintiff to jury trial limited to that particular claim); *cf. Spiselman v. Rabinowitz,* 270 A.D. 548, 61 N.Y.S.2d 138, 140–41 (N.Y.App.Div.1946) (plaintiff alleging trade secret misappropriation may elect to "bring an action at law to recover money damages"). In addition, there is no jury trial right under the New York Constitution.[5] Therefore, there is no right to trial by jury on this claim.

### H. *The Request For Attorneys" Fees And Costs Is Not Tried To A Jury*

■ It is well settled that a claim for attorneys' fees and costs under the Lanham Act does not entitle a party to a trial by jury. *Nikon, Inc. v. Ikon Corp.,* 803 F.Supp. 910, 928 (S.D.N.Y.1992); *Partecipazioni Bulgari S.p.A. v. Meige,* 7 U.S.P.Q.2d 1815, 1817 (S.D.Fla.1988); *see also Basch,* 968 F.2d at 1543 ("The decision whether or not to award such fees (under Lanham Act) also rests within the broad discretion of the district judge.") (*citing Getty Petroleum Corp. v. Bartco Petroleum Corp.,* 858 F.2d 103, 114 (2d Cir.1988), *cert. denied,* 490 U.S. 1006, 109

S.Ct. 1642, 104 L.Ed.2d 158 (1989)); *Ringling Bros.,* 955 F.Supp. at 605 ("Costs are merely incidental to and intertwined with other available remedies. Thus, where the other available remedies are wholly equitable, costs are also an equitable remedy.") (citation omitted); *cf. Daisy,* 999 F.Supp. at 549 (noting plaintiff did not dispute that its claim for attorneys' fees was equitable in nature and did not entitle it to a jury trial); *Ideal World,* 997 F.Supp. at 335 (noting defendant's argument that plaintiff was not entitled to jury trial because it withdrew damages claim and now sought entirely equitable relief, including costs and attorneys' fees). Thus, General Cigar is not entitled to a jury on this requested relief.

### I. *Defendants Are Not Entitled To A Jury On Their Counterclaim For Declaratory Relief*

■ Finally, General Cigar's counterclaim for declaratory relief presents no right to trial by jury. A complaint for declaratory relief does not give rise to a right to jury trial when the underlying issues in the action do not give rise to a right to a jury trial. *See Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 504, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). As set forth above, Cubatabaco's complaint for injunctive and ancillary relief raises solely equitable issues properly addressed only to the court. General Cigar's counterclaim for declaratory relief, asking for dismissal of the complaint and declaring its right to use the COHIBA mark, adds nothing new to the issues raised in the complaint and therefore raises no legal rights. *Cf. Lee*

---

**5.** Of course, it is well settled that the question of right to jury trial in this action, even on state claims, is to be decided as a matter of federal law. When state-created rights are enforced in the federal courts, the federal courts are not bound by state jury practices. *See Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) ("[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions.... In diversity cases, of course, the substantive dimension

of the claim asserted finds its source in state law ... but the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law."); *Byrd v. Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525, 538, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) ("[T]here is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts.").

*Pharmaceuticals v. Mishler*, 526 F.2d 1115, 1116 (2d Cir.1975) (counterclaim seeking injunction against trademark infringement and damages gave rise to jury trial right). Therefore, there is no jury trial right on General Cigar's counterclaim.

Moreover, assuming *arguendo* that General Cigar's counterclaims were to raise legal issues triable to a jury, defendants still would not be entitled to a jury trial on their counterclaims because the Foreign Sovereign Immunities Act (the "FSIA") precludes jury trials in all actions against a foreign state, including counterclaims.[6] *Allendale Mutual Ins. Co. v. Bull Data Sys., Inc.*, No. 91 C 6103, 1995 WL 5895, at *2 (N.D.Ill. Jan. 4, 1995) ("The absence of a right to jury trial also applies when the claim against the foreign state is brought as a counterclaim or cross-claim."); *Caribbean Trading and Fidelity Corp.*, No. 90 Civ. 4169, 1993 WL 541236, at *6 (S.D.N.Y. Dec. 28, 1993) (observing that even in the case of a compulsory counterclaim against a foreign state, "[t]he FSIA expressly precludes jury trials in order to depoliticize such cases"); *National Iranian Oil Co. v. Ashland Oil, Inc.*, 716 F.Supp. 268, 275 (S.D.Miss.1989) ("The counterclaim should be tried without a jury in accordance with the provisions of the FSIA."); *see Bailey v. Grand Trunk Lines New England*, 805 F.2d 1097, 1101 (2d Cir.1986) ("[W]e expressly have held that the FSIA strips a plaintiff of an otherwise valid entitlement to a jury trial."); *Ruggiero v. Compania Peruana De Vapores, Inca*, 639 F.2d 872, 876–881 (2d Cir.1981) (discussing FSIA bar to jury trial in context of direct suit against foreign state); *Jones v. Shipping Corp. of India, Ltd.*, 491 F.Supp. 1260, 1263 (E.D.Va.1980) ("This statutory scheme [under the FSIA] delineates those actions which subject a foreign state to

suit and then provides for trial by the court without a jury for those non-immune activities.").

Jurisdiction in federal courts over actions against foreign states, agencies, or instrumentalities is based upon 28 U.S.C. § 1330(a) and is expressly limited to "nonjury civil actions":

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a).

General Cigar alleges in its counterclaim that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1338(a) and 1331, Cubatabaco's reply erroneously admits to subject matter jurisdiction under these provisions. The parties, of course, cannot confer subject matter jurisdiction on the district court. However, as the Second Circuit made clear in *Ruggiero*, the sole and exclusive basis for an action against a foreign sovereign is 28 U.S.C. § 1330(a). 639 F.2d 872. The Second Circuit holding in *Ruggiero* was based in part on the House and Senate Reports that accompanied the FSIA at the time of its enactment. The court concluded that Congress intended that, in return for affording a limited basis for jurisdiction against a foreign state, foreign states would not be subjected to jury trial:

> The reports thus confirm what is patent from the statutory language—Congress wished to provide a single vehicle for

---

6. The FSIA defines a "foreign state" to include an "agency or instrumentality of a foreign state." 28 U.S.C. § 1603(b). "An 'agency or instrumentality of a foreign state' means any entity (1) which is a separate legal person, ... and (2) ... a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision

thereof, and (3) which is neither a citizen of a State of the United States ... nor created under the laws of any third country." 28 U.S.C. § 1603(b). There is no dispute that Cubatabaco is an "agency or instrumentality of a foreign state" within the meaning of the FSIA.

actions against foreign states or entitles controlled by them, to wit, § 1330 and § 1441(d), its equivalent on removal, and to bar jury trial in each. In return for conferring upon plaintiffs this clear basis of jurisdiction in actions against foreign states ..., Congress intended that the foreign state, defined broadly in § 1603, *was not to be subjected to jury trial*—a form of trial alien to most of them in civil cases and from which the United States, in granting consent to suit, has generally exempted itself. 28 U.S.C. § 2402.

*Id.* at 878. The court rejected the argument that deprivation of a jury trial in actions against foreign states violates the Seventh Amendment, stating, "[w]e have been pointed to nothing to show that a right of jury trial existed under the common law in 1791 with respect to a suit against a foreign government or an instrumentality thereof; such a suit could not be maintained at all." *Id.* at 879. The court held that suits against foreign sovereigns, "unknown to the common law in 1791," did not fall within the scope of the Seventh Amendment's preservation of jury trial. *Id.* at 880–881.

Moreover, the language of § 1330(a)—and the policy considerations underlying that provision—directs the interpretation that an "action against a foreign state," 28 U.S.C. § 1330(a), compulsory counterclaims. *See National Iranian Oil,* 716 F.Supp. at 271–71. Section 1330(a) provides for original jurisdiction of nonjury civil actions against a foreign sovereign other than those claims to which the sovereign is immune, referencing *inter alia* 28 U.S.C. § 1607(b), which is a provision pertaining solely to circumstances under which a foreign sovereign is immune to counterclaims. *See* 28 U.S.C. §§ 1330(a) and 1607(b). "It follows that the phrase 'action against a foreign state' was intended to refer not only to a direct claim against a foreign sovereign but also to a counterclaim against it." *National Iranian Oil,* 716 F.Supp. at 271.

Thus, the counterclaims asserted by General Cigar do not entitle it to a jury trial.

### Conclusion

Therefore, because Cubatabaco's claims are equitable in nature and because of the strictures of the FSIA, General Cigar is not entitled to a jury trial and its demand is hereby stricken.

It is so ordered.